**Leon BATES, Plaintiff-Appellant,**

v.

**J.W. JEAN, et al., Defendants-Appellees.**

**No. 82–3089.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1984.

Decided Oct. 12, 1984.

Allen E. Shoenberger, Scott Beckman, Law Student, Chicago, Ill., for plaintiff-appellant.

John Vaudreuil, Asst. U.S. Atty., Madison, Wis., for defendants-appellees.

Before BAUER, CUDAHY and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

*Pro se* plaintiff, Leon Bates, brought this suit under the Fifth and Eighth Amendments against four federal correctional officers alleging that he was beaten by them before boarding a bus to take him from the Federal Correctional Institution at Oxford, Wisconsin, to the United States Penitentiary in Leavenworth, Kansas. The jury, in answer to two special verdict questions, found that one of the defendants, James Jean, had intentionally violated the plaintiff's constitutional rights, but concluded that Jean had acted in good faith. The district court entered judgment for the defendants and the plaintiff appeals. The plaintiff, now represented by counsel in this court, requests that the judgment in favor of Jean be reversed because the two special verdicts are inconsistent. Finding the special verdicts irreconcilable, we vacate the judgment as to Jean and remand that portion of the jury verdict to the district court for a new trial.

The incident underlying this lawsuit took place on February 5, 1982, when 36 prisoners were being transferred from a federal correctional institution in Wisconsin to a federal correctional institution in the state of Kansas. The defendants in this action were federal correctional guards at the time of the altercation. At trial, the plaintiff testified that he had asked Jean, the guard who was to accompany the prisoners on the bus ride, for permission to use the bathroom before boarding the bus and that Jean refused him permission. The plaintiff then made the same request of another defendant, Reginald LaRue. According to a plaintiff's witness, Jean overheard the request and rushed at the plaintiff with a chain shouting, "I told him no!" and, "Let's get the son-of-a-bitch." The plaintiff testified that the defendants descended on him and that his arm was injured. The defendants agreed that the plaintiff's glasses were broken in a struggle, but denied having hit the plaintiff. The defendants also testified that a rapid and forceful response to the plaintiff's seeming defiance was required because they feared that the other inmates would attempt a jail break. At the time, approximately twenty-five other inmates were in the same holding area with the plaintiff, and only ten of them were in handcuffs.

After presentation of the evidence in the one day trial, both sides submitted proposed jury instructions, including an instruction on the issue of good faith. The trial judge gave the respective parties cop-

ies of the special interrogatories that he had drafted. The plaintiff, who was proceeding *pro se*, objected to neither the interrogatories nor the instructions.

After deliberating for one hour, the jury returned the special verdict forms to the clerk, with the following answers:

1. Which of the following defendants, if any, knowingly and intentionally deprived plaintiff of liberty and subjected him to cruel and unusual punishment?

| | |
|---|---|
| _____ | None |
| X | James W. Jean |
| _____ | R.A. LaRue |
| _____ | William Mauer |
| _____ | Richard Laabs |

If you checked none in Question 1, answer no more questions. If you checked any names in question 1, answer the following question with reference only to the names checked:

2. Did any of the following defendants act in good faith? (Answer yes or no to each of the following:)

| | |
|---|---|
| YES | James W. Jean |
| _____ | R.A. LaRue |
| _____ | William Mauer |
| _____ | Richard Laabs |

If you answered yes to all in Question 2, proceed no further.

The jury did not answer the remaining questions on the special verdict form and awarded no damages. After giving the plaintiff an opportunity to object, and receiving no objections, the judge entered judgment in favor of the defendants.

At the outset, relying on *Barnes v. Brown*, 430 F.2d 578 (7th Cir.1970) and *Cundiff v. Washburn*, 393 F.2d 505 (7th Cir.1968), the defendants argue that the plaintiff cannot attack the special verdicts on appeal because he failed to move that the inconsistent verdicts be resubmitted to the jury before it was discharged. In *Barnes* and *Cundiff* we refused to consider arguments that the jury verdicts were inconsistent because the appellants had failed to timely object before the trial court. However, those cases were decided under Fed.R.Civ.P. 49(b),[1] and both involved a special verdict that was inconsistent with the general verdict. In the instant case, brought by a *pro se* plaintiff, there

---

1. Fed.R.Civ.P. 49 provides:

Special Verdicts and Interrogatories.

(a) Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

(b) General Verdict Accompanied by Answer to Interrogatories.

The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

was no general verdict and the special verdicts were submitted to the jury under Fed.R.Civ.P. 49(a). There is a split in the circuits over whether failure to raise the inconsistency of special verdicts given under Rule 49(a), in the trial court, waives consideration of that issue on appeal. *Compare Mercer v. Long Manufacturing,* 671 F.2d 946, 947–48 & n. 1 (5th Cir.1982) (finding no such waiver), *with Skillin v. Kimball,* 643 F.2d 19, 19–20 (1st Cir.1981) (finding waiver). This court has not yet considered the waiver issue when special verdicts are inconsistent with each other in the absence of a general verdict, nor have we ruled on the manner of preserving error under Rule 49(a). We need not decide these issues at this time, since the plaintiff was acting *pro se* in the trial court. Usually we will accord such *pro se* litigants somewhat greater flexibility than attorneys, and we have decided to do so in this fact situation.

 *Pro se* litigants are commonly required to comply with standards less stringent than those applied to expertly trained members of the legal profession. *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 175–176, 66 L.Ed.2d 163 (1980); *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Madyun v. Thompson,* 657 F.2d 868, 876 (7th Cir. 1981). Whether a *pro se* party who has gone to trial has waived an issue on appeal must often be decided on a case-by-case basis. *Caruth v. Pinkney,* 683 F.2d 1044, 1050 (7th Cir.1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983). The question of the consistency of the special verdicts in this case requires a greater degree of legal sophistication than we ordinarily demand of *pro se* prisoner litigants.

Furthermore, the specificity of a rule of civil procedure is one factor to be considered in determining the flexibility accorded to *pro se* litigants. *See Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982). Rule 49(b) explicitly provides that the trial court may enter judgment in accordance with the special verdicts, return the jury, or order a new trial when the special verdict answers are consistent with each other but inconsistent with the general verdict (the situation presented in both *Barnes* and *Cundiff*). On the other hand, when the special verdict answers are inconsistent with each other and with the general verdict, Rule 49(b) states that the trial court shall return the jury to reconsider the inconsistent verdicts or order a new trial. However, Rule 49(a) does not explain the options available to a litigant when there are inconsistencies within the special verdict and no general verdict is before the jury for consideration. Finally, the district court judge in *Cundiff,* after pointing out the apparent inconsistency in the verdicts, specifically asked counsel whether they wished to resubmit the verdicts.[2] In contrast, in the instant case the judge asked the plaintiff, "Do you have anything at this time Mr. Bates?" The plaintiff replied, "No. I don't have anything, sir." Because the plaintiff is *pro se* and in all probability did not understand the judge's question we decline to announce a new appellate waiver rule.[3] We find that this *pro se* litigant, under the limited fact situation presented in this case, has not waived our consideration on appeal of the inconsistency of the two special verdicts. *See Fugitt v. Jones,* 549 F.2d 1001, 1005 (5th Cir.1977). *See also Hall v. Ashley,* 607 F.2d 789 (8th Cir.1979).

**2.** The district court judge stated, "Gentlemen, there seems to be a discrepency between the answer to the interrogatory and the verdict. Do either of you desire that I explain this matter to the jury and ask them to return to the jury room for further deliberation?" After conferring, appellants attorneys answered in the negative. *Cundiff v. Washburn,* 393 F.2d 505, 506 (7th Cir.1968). It is difficult to conceive of a clearer circumstance in which to announce a new rule of waiver on appeal.

**3.** We do not, of course, imply that the district court has a duty to point out possible inconsistencies in special jury verdicts to all *pro se* parties. However, the amount of guidance given by a district court judge is a factor to be considered in deciding whether a *pro se* litigant is barred from asserting an issue for the first time on appeal. *See Caruth v. Pinkney,* 683 F.2d 1044, 1050 (7th Cir.1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983).

■ This case involves the doctrine of qualified immunity, which shields federal officials from liability, when they are sued directly under the Constitution, in the same manner that state officials are protected in actions brought under 42 U.S.C. § 1983. *Butz v. Economou,* 438 U.S. 478, 499–508, 98 S.Ct. 2894, 2907–2912, 57 L.Ed.2d 895 (1978). As is the common practice, the district court referred to qualified immunity as "good faith immunity," but, as this case illustrates, that label can lead to confusion because it incorrectly implies that subjective factors are important. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982), the Supreme Court rejected any inquiry into an official's state of mind in favor of a wholly objective immunity standard. Under the doctrine of qualified immunity the central question is whether the conduct complained of violated clearly established constitutional or statutory rights. *Id.* No other circumstances are relevant. *Davis v. Scherer,* —— U.S. ——, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984). Qualified immunity is based solely on the "state of the law" at the time of the act giving rise to the litigation, *Joseph v. Brierton,* 739 F.2d 1244, 1249–50 (7th Cir. July 1984); *McKinley v. Trattles,* 732 F.2d 1320, 1324 (7th Cir.1984), and thus may be resolved by summary judgment, *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39. In most situations, qualified immunity is a question of law for the judge not the jury. *Joseph,* 739 F.2d at 1249; *McKinley,* 732 F.2d at 1324. In this case, the district court judge should have ruled on the immunity question rather than submitting it to the jury, and thus the problem of inconsistent verdicts would have been avoided. However, although represented by counsel in this court, plaintiff does not now raise as error the submission of the issue to the jury; therefore that error will not serve as a basis for reversal. *See In re UNR Industries,* 736 F.2d 1136, 1138 n. 4 (7th Cir.1984). However, plaintiff does raise as error the entry of judgment upon inconsistent special verdicts. We therefore turn to the question whether the special verdicts are inconsistent.

■ The defendants argue that the judgment must be affirmed because the first interrogatory refers to acts done knowingly and intentionally, while the second refers to the defendants' knowledge of the plaintiff's rights. The defendants assert that there is no inconsistency in saying that Jean intended to hit the plaintiff, but that he didn't realize it would violate the plaintiff's rights. We simply cannot accept the defendants' proposed construction because it completely rewrites the first interrogatory. Nowhere does the interrogatory refer to "acts" of the defendants. Rather, the interrogatory asks whether the defendants "knowingly and intentionally deprived the plaintiff of liberty and subjected him to cruel and unusual punishment." Thus, it inquires whether any defendant knowingly and intentionally violated the plaintiff's rights. To knowingly violate a person's rights one must have knowledge of those rights. We conclude that it is impossible to knowingly violate a person's rights, and yet be unaware that such actions are unconstitutional. We therefore reject the defendants' argument.

■ Of course, the consistency of the jury verdicts must be considered in light of the judge's instructions to the jury. *Gallick v. Baltimore & Ohio Railroad,* 372 U.S. 108, 118–22, 83 S.Ct. 659, 665–68, 9 L.Ed.2d 618 (1963). The district court judge instructed the jury that in order to prevail the plaintiff had to prove that he had been deprived of liberty, subjected to cruel and unusual punishment, and that the conduct of the defendants was knowing and intentional. To conclude that the defendants had violated the plaintiff's Fifth and Eighth Amendment rights, the jury had to find that: 1) the defendants had acted under circumstances in callous and shocking disregard for the plaintiff's well-being, 2) the defendants' actions shocked the conscience, or 3) the defendants' actions were brutal and offensive to human dignity. The judge added that in determining whether punishment is cruel and unusual the jury should consider such factors as the need for the application of force and

its relation to the amount of force that was used, the extent of any injury inflicted, and "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *See Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) (cited with approval in *Stringer v. Rowe*, 616 F.2d 993, 999 (7th Cir.1980)). The judge then stated:

> Good faith. In the event that you find the actions of the defendants were arbitrary, capricious or without rational basis, you will then be asked in another question to determine whether the defendant acted in good faith. That's again for your determination as to whether or not the defendants acted in good faith.
>
> And, a Government employee or official performing discretionary functions acts in good faith unless you find that his or her conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known.

■ Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). However, we find totally implausible any suggestion that the two special verdicts could be made consistent by construing them to mean that, although Jean knew that he was violating the plaintiff's rights, a reasonable person would not have known that these actions were a violation. A reasonably competent public official is expected to know the law governing his conduct. *Crowder v. Lash*, 687 F.2d 996, 1007 (7th Cir.1982). We have stated many times that the Constitution prohibits prison officials from intentionally inflicting "excessive or grossly severe punishment." *Stringer v. Rowe*, 616 F.2d 993, 998 (7th Cir.1980). *See also Chavis v. Rowe*, 643 F.2d 1281, 1291 (7th Cir.), *cert. denied*, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225

(1981); *United States ex rel. Miller v. Twomey*, 479 F.2d 701, 719–20 (7th Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974), *Bracey v. Herringa*, 466 F.2d 702, 704 (7th Cir.1972). Under the court's instructions, to have answered the first interrogatory in the affirmative the jury would have had to find defendant Jean's actions "shocking," "callous," or "brutal." Such a finding cannot be reconciled with the finding that a reasonable prison guard would not have known that these actions were unlawful. *See Chapman v. Pickett*, 586 F.2d 22, 28–29 (7th Cir.1978). *See also Joseph v. Brierton*, 739 F.2d 1244, 1250 (7th Cir.1984).

■ We conclude that the two special verdicts concerning James Jean were inconsistent, and thus it was error for the district court to enter judgment. The judgment of the district court in favor of James Jean is reversed and that portion of the case is remanded for a new trial. Jean would have a qualified immunity defense if he could demonstrate that at the time of the alleged incident he could not have known that the Constitution prohibited the intentional infliction of "excessive or grossly severe punishment" on prisoners. Because the law proscribing abuse of prisoners was clearly established as of that date, following the dictates of *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982), we hold that Jean will not have this qualified immunity defense available to him. At re-trial, in determining whether the plaintiff's constitutional rights were violated, an important factual question exists for the jury's determination—specifically, whether Jean's conduct during the altercation was excessive given the circumstances existing at that time in the holding cell, including the danger of a possible jail break. Thus, it is for the jury to determine which party presents the most credible version of the incident and whether, in light of these varying versions, Jean's reaction to the problem was reasonable. Because there was no inconsistency in the verdicts as to the remaining defendants, the judgments in their

favor stand. *See Griffin v. Matherne,* 471 F.2d 911, 918 (5th Cir.1973).

AFFIRMED IN PART, REVERSED AND RE-MANDED IN PART.