**Oliver WAGGONER, et al., Plaintiffs-Appellees, Cross-Appellees (85–3240/3304), Appellants (85–3251),**

**v.**

**Howard MOSTI, et al., Defendants-Appellants, Cross-Appellants (85–3240/3304) Appellees (85–3251).**

**Nos. 85–3240, 85–3251 and 85–3304.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1986.

Decided June 12, 1986.

Barry M. Hill, argued, Zagula, Hill, Dittmar & Thomas, Weirton, W.Va., for Waggoner.

David L. Day, argued, Columbus, Ohio, for Mosti.

Before MARTIN and KRUPANSKY, Cir-

cuit Judges; and CHURCHILL,* District Judge.

CHURCHILL, District Judge.

The plaintiff, Oliver Waggoner, was arrested on October 29, 1980, in Toronto, Ohio, by Toronto Police Officers Howard Mosti and Michael Donohue. In the process of being arrested and soon after his arrest, the plaintiff suffered severe injuries including a fractured jaw and a fractured knee. Waggoner subsequently commenced a suit in the Southern District of Ohio, seeking damages under 42 U.S.C. § 1983 and under a pendent state claim of assault and battery. Waggoner's wife, Mary Ellen Waggoner, joined in this suit and sought recovery for loss of consortium.

At trial, the following claims were submitted to the jury with the appropriate instruction that it must consider each claim separately and that its verdict as to one claim should not control its verdict as to any other claim: (1) Oliver Waggoner's claim for damages against the two police officers for violation of federal constitutional rights pursuant to 42 U.S.C. § 1983. (2) Oliver Waggoner's pendent state claim for damages against the two police officers for assault and battery. (3) Waggoner's wife's claim for loss of consortium. (4) Mosti's counter-claim against Waggoner for damages for assault and battery. (5) Donohue's counter-claim against Waggoner for damages for assault and battery.

The jury returned a general verdict in Waggoner's favor against Donohue and Mosti with actual damages of $130,000, but without punitive damages. There was a general verdict against Waggoner's wife on her consortium claim and against Donohue and Mosti on their counter-claims. In addition, the jury returned answers to special interrogatories. Of particular relevance are the jury's answers to special interrogatories Nos. 1, 3 and 4.

In responding to special interrogatory No. 1, the jury found that Donohue and/or

Mosti had probable cause to arrest Waggoner. With respect to special interrogatory No. 3, the jury concluded that Donohue and Mosti used excessive force in arresting Waggoner and/or in maintaining him in custody. In answering special interrogatory No. 4, the jury determined that neither Donohue nor Mosti committed an assault and battery on Waggoner.

The Court accepted the verdict and entered judgment in Waggoner's favor in accordance with the general verdict. Mosti and Donohue filed a motion for new trial claiming that the answers by the jury to special interrogatories Nos. 3 and 4 were in conflict with each other and that the answer to special interrogatory No. 4 was in conflict with the general verdict. They also asserted that the verdict and judgment were contrary to the manifest weight of the evidence. The motion was denied, and Mosti and Donohue now appeal that ruling and also the propriety of the trial court's award of attorney fees to Waggoner. Waggoner also appeals the trial court's order on attorney fees, contending that the fees were unreasonably reduced in certain respects.

With regard to the sufficiency of evidence, the evidence in the case was broad-ranging and was sufficient to support any consistent findings with respect to issues submitted to the jury. Thus, the controlling issue on appeal is whether the trial court erred in its application of Federal Rule of Civil Procedure 49(b), which provides in pertinent part:

> When the answers [to special interrogatories] are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment is not to be entered, but the Court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

■ The standards for application of Rule 49(b) are well settled. If answers to

* Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan,   sitting by designation.

special interrogatories are inconsistent with each other and one or more of the answers is inconsistent with the general verdict, the trial court has no authority to enter judgment but must return the jury for further deliberation or order a new trial. *Bahamas Agr. Industries Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1183 (6th Cir.1975). Nevertheless, it is incumbent upon a trial court, as well as an appellate court, "to reconcile the answers if possible under any view of the evidence in the case." *Sylvestri v. Warner & Swasey Co.*, 398 F.2d 598, 603 (2d Cir.1968); *see also Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963) (courts "must attempt to reconcile the jury's findings, by exegesis if necessary"); *Monsma v. Central Mutual Insurance Company*, 392 F.2d 49, 54 (9th Cir.1968); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2513 (1971). We note that "the consistency of the jury verdicts must be considered in light of the judge's instructions to the jury." *Bates v. Jean*, 745 F.2d 1146, 1151 (7th Cir.1984).

The defendants have not claimed error in the jury instructions and we decline to hold that, viewed as a whole, they are plainly in error. The jury was instructed that in order to find that excessive force was used, they must find that the police acted knowingly and that the force used was beyond that reasonably necessary to do the job. The court specifically stated that the jury must find "the amount of force used was grossly disproportionate to the need for force under the circumstances" and "the amount of force used amounted to an abuse of official power that shocks the conscience." The court did not require that the officers must have specifically intended to injure Waggoner physically. We note that the instructions required that the jury find more than mere negligence in order to find a § 1983 violation. *Daniels v. Williams*, — U.S. —, 106 S.Ct. 662, 665–67, 88 L.Ed.2d 662 (1986).

Concerning the pendent Ohio claim for assault and battery, the court instructed the jury that to find for Waggoner they must find that the officers intended to injure him. The court stated that Waggoner had to prove "that one or both of the defendants performed the act or acts with the intent of inflicting personal violence or injury upon the person of the plaintiff." The court then carefully instructed the jury on the difficulties of discerning a person's intent. It is clear from the instructions that a jury could have found that although excessive force was used, the officers did not specifically intend to inflict "personal violence or injury" upon Waggoner.

■ The defendants state that the answers are inconsistent because the jury instructions contained the following statement: "If you find that the officers used a reasonable amount of force *in arresting* Mr. Waggoner, then you cannot find an assault and battery was committed on Mr. Waggoner." (emphasis added). This argument has two weaknesses. First, it is not a necessary conclusion that if the jury did not find an assault and battery, they must have found that reasonable force was used. Moreover, Waggoner suffered severe injury while in custody subsequent to the arrest; the instruction on his federal claim discussed the use of excessive force both at his arrest and during the time in which he was in custody. It is plausible that the jury found that the unconstitutional excessive force occurred only after Waggoner was in custody. We find that the answers to the interrogatories are consistent and that the trial court did not err in denying the motion for a new trial.

The claims of error in connection with the trial court's award of attorney's fees also require note. The calculation of an appropriate attorney's fee award in a civil rights case is within the sound discretion of the trial court. *Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). In this instance, we reject Waggoner's claim that the trial court's exercise of discretion to reduce the requested fees and costs was inappropriate. Likewise, we reject Mosti's and Donohue's contention that the trial court abused its

discretion in awarding any fees and costs to Waggoner.

The judgment and award of attorney's fees and costs are affirmed.

KRUPANSKY, Circuit Judge, dissenting.

Because the majority fails to recognize and resolve the patent conflict presented in this appeal, I must respectfully dissent.

The defendants Howard Mosti (Mosti) and Michael Donohue (Donohue) appealed from a jury verdict in favor of plaintiff Oliver Waggoner (Waggoner) in this action pursuant to 42 U.S.C. § 1983 asserting that excessive force was used in effecting plaintiff's arrest. The plaintiff cross-appealed from an order denying in part his request for attorneys fees and expenses.

Waggoner initiated this action, wherein he alleged that defendants Mosti and Donohue, as employees and police officers of the City of Toronto, Ohio, deprived him of rights secured to him by the Fourth and Fourteenth Amendments of the United States Constitution when they arrested him on October 29, 1980. Specifically, Waggoner alleged that he was unlawfully arrested without probable cause, that Mosti and Donohue committed violent, unjustified and illegal attacks on his person, and that Mosti and Donohue used excessive force in effecting his arrest. In addition, Waggoner alleged a pendent state law claim for assault and battery. Mosti and Donohue, in turn, filed a counterclaim asserting that Waggoner had assaulted and battered each of them.

The operative facts are easily summarized. Waggoner was a teamster truckdriver who also was employed as a bartender in a Toronto, Ohio tavern. The plaintiff's wife was employed at the Toronto Lawsons convenience store and worked the midnight to 8:00 a.m. shift. Waggoner was extremely jealous of his wife. As a result of his jealousy, Waggoner initiated a practice of surveilling her activities at the Lawsons store on his way home from his bartending job.

In the early morning hours of October 21, 1980, the plaintiff entered the Lawsons store and observed three police officers purchasing coffee at the counter. Waggoner had been drinking and was visibly intoxicated. In the presence of the police officers, Waggoner accused his wife of having sex with the officers that were, from time to time, customers of the store. After the officers departed, a vehement confrontation between the plaintiff and his wife ensued during which argument Waggoner violently threw a number of counter displays and a cash register to the floor.

At approximately 6:30 a.m. on October 21, 1980, Donohue was dispatched to the Lawsons store to investigate the Waggoner incident. Subsequent to interviewing the plaintiff's wife, he returned to his cruiser and maintained a continuous surveillance of the store. Waggoner returned to the store, purchased a cup of coffee, and subsequent to another confrontation with his wife, left the store, entered his vehicle, and drove away at an excessively high rate of speed. Donohue pursued the speeding vehicle, ordered Waggoner to stop, placed him into custody, and charged him with failure to stop at a red light, driving while intoxicated and disorderly conduct.

On the morning of October 30, 1980, Waggoner again stopped at the Lawsons store on the way home from the tavern and interrogated his wife about any police officers who had been in the store that evening. After the plaintiff's wife advised him that Donohue and Mosti had visited the store earlier that evening, the plaintiff stated that if he had been there at the time, he would have shot them if he had a gun. Some time later, Mosti and Donohue returned to the store and the plaintiff's wife told them that Waggoner had stated that if he, Waggoner, had been in the store earlier during Mosti's and Donohue's presence, he would have shot them if he had a gun.

Shortly thereafter, Donohue and Mosti observed Waggoner sitting in his pickup truck on a nearby street. When the officers attempted to arrest him for threatening a police officer, Waggoner violently

resisted the arrest. A struggle ensued during which the officers forced Waggoner against his truck in an effort to subdue and handcuff him. The evidence adduced at trial disclosed that Waggoner suffered a broken jaw and fractured kneecap as a result of the arrest.

At trial, Waggoner attempted to prove that the officers did not have probable cause to arrest him, that he did not resist arrest, that Mosti and Donohue beat him repeatedly about the face with their fists while effecting his arrest, and that one of the officers intentionally knocked him to the ground at the police station while they were restraining him. Waggoner further attempted to prove that even if he had been resisting arrest, the officers exceeded the bounds of permissible police procedures by forcing him against his truck in a manner that caused him to suffer his injuries.

Donohue and Mosti presented evidence that disclosed that they had probable cause to arrest Waggoner for threatening a police officer, that Waggoner punched and kicked the officers while resisting the arrest, that they held him against the truck in an effort to handcuff him, and that Waggoner continued to resist arrest throughout the entire incident up to and including his arrival at the police station.

At the conclusion of the trial, the court submitted special interrogatories to the jury pursuant to Federal Rule of Civil Procedure 49(b). The jury answered the interrogatories relevant to this appeal as follows:

1.  Q.  Did defendant Donohue and/or Mosti have probable cause to arrest plaintiff Oliver Waggoner?

    A.  <u>Yes</u>  (Yes or No)

                    *  *  *

3.  Q.  Did defendant Donohue and/or Mosti use excessive force in arresting plaintiff Waggoner and/or maintaining him in custody?

    A.  <u>Yes</u>  Donohue  (Yes or No)
        <u>Yes</u>  Mosti     (Yes or No)

4.  Q.  Did either defendant Donohue or Mosti commit assault and battery on plaintiff Oliver Waggoner?

    A.  <u>No</u>   Donohue  (Yes or No)
        <u>No</u>   Mosti     (Yes or No)

The jury awarded Waggoner $130,000 in compensatory damages, but refused to award him any punitive damages. Mosti and Donohue filed a motion for a new trial which was overruled. This timely appeal ensued.

On appeal the defendants assigned error to the trial court's disposition of their motion for a new trial predicated upon the jury's inconsistent responses to interrogatories # 3 and # 4 arguing that the jury's responses to interrogatories # 3 and # 4 were inconsistent with each other and with the general verdict in favor of the plaintiff. The officers reasoned that the jury, in its answer to interrogatory # 4 absolved them of the element of "intent" which was essential to support a charge of assault and/or battery. Absent the element of intent, the officers were equally absolved from "maliciously" using excessive force to confine the plaintiff since intent was also a necessary element in proving malice. The officers concluded their analysis by asserting that absent a finding of intent to use unreasonable force to subdue the plaintiff which resulted in his injury, the force actually used, if in fact it was unreasonable, was negligently applied and, at best, constituted common law negligence which invalidated the jury's verdict since negligent acts are not cognizable pursuant to § 1983.[1]

Federal Rule of Civil Procedure 49(b) states in relevant part:

> The court may submit to the jury, together with appropriate forms for a general verdict, written issues of fact the decision of which is necessary to a verdict.... When the answers are inconsistent with each other and one or more is likewise inconsistent with the general

---

1.  The jury had been instructed that, in order to prevail, plaintiff was charged with the burden of proving that "one or both of the defendants performed the act or acts with the intent of inflicting personal violence or injury upon the person of the plaintiff."

verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

Accordingly, if the jury's answers to the special interrogatories were inconsistent with each other or if one of the answers was inconsistent with the general verdict, the case must be remanded for a new trial. *Willard v. The John Hayward,* 577 F.2d 1009, 1011 (5th Cir.1978). In determining if the jury's answers to special interrogatories were inconsistent with the general verdict, this court must endeavor to reasonably harmonize the answers. *McIntyre v. Everest & Jennings,* 575 F.2d 155, 157 (8th Cir.1978), *cert. denied,* 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978) (*citing Gallick v. Baltimore & Ohio R. Co.,* 372 U.S. 108, 114, 83 S.Ct. 659, 663, 9 L.Ed.2d 618 (1963)). The reviewing court must decide if the jury's answers and verdict represent a logical and probable decision on the relevant issues as submitted. *Willard v. The John Hayward,* 577 F.2d 1009, 1011 (5th Cir.1978). The consistency of the answers must be considered in light of the instructions to the jury. *Bates v. Jean,* 745 F.2d 1146, 1151 (7th Cir.1984) (*citing Gallick, supra* ).

42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To prevail in an action initiated pursuant to § 1983, a plaintiff must demonstrate (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the defendants' conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). The plaintiff identified two separate rights that were allegedly infringed by the action of Donohue and Mosti: (1) his Fourteenth Amendment right to be free of police conduct which "shocks the conscience"; and (2) his Fourth Amendment right to be free from unreasonable seizures.

In *Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court indicated that negligent acts of government officials which resulted in a loss of property or a restriction of liberty did not rise to the level of a "deprivation" within the meaning of the due process clause. However, the court reserved the general question of "whether something less than intentional conduct, such as recklessness or 'gross negligence' is enough to trigger the protections of the Due Process Clause." 106 S.Ct. at 667 n. 3.[2] In *Wilson v. Beebe,* 770 F.2d 578, 586 (6th Cir.1985), this circuit decreed that intent was an indispensable element of a substantive due process violation based on official conduct which shocks the conscience. Accordingly, because the jury's answer to interrogatory # 4 disclosed that Waggoner failed to prove that the arresting officers acted with an intent to use excessive force, the plaintiff could not have prevailed on his substantive due process claim as a matter of law.

In addition to pursuing a substantive due process violation, the plaintiff also proceeded on the theory that the defendants used excessive force and thereby deprived him of his Fourth Amendment right to be free from unreasonable seizures. The plaintiff

---

**2.** Further limiting its holding, the *Daniels* court stated "we need not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of due care in order to hold, as we do, that such conduct does not implicate the Due Process Clause of the Fourteenth Amendment." 106 S.Ct. at 666.

has stated that his Fourth Amendment claim did not come within the pronouncements of *Beebe* since it rested upon the violation of a substantive constitutional right. Indeed, the *Beebe* court specifically noted that "this case was not pleaded or tried as one for the violation of the Fourth Amendment right to be free from unreasonable seizures or any other substantive right specified in the constitution." *Beebe*, 770 F.2d at 586. Nonetheless, the defendants countered that the requirement of intent announced in *Beebe* should be extended to include Fourth Amendment violations predicated upon the use of excessive force in effecting an arrest and maintaining custody.

In *Tennessee v. Garner*, — U.S. —, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Supreme Court defined the criteria to be applied in analyzing § 1983 claims based upon a violation of the Fourth Amendment. In *Garner*, the father of an unarmed felony suspect who was shot and killed while fleeing the scene of an alleged burglary initiated an action pursuant to § 1983 wherein he alleged that the use of deadly force to apprehend an unarmed fleeing felony suspect under circumstances where the officers had no probable cause to believe that the fleeing felon posed an immediate threat of death or serious bodily injury to them or others violated the decedent's Fourth Amendment rights. The Supreme Court stated that "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment" and concluded that police officers could not use deadly force to prevent the escape of a felony suspect unless the use of such force was necessary to prevent the escape and the police officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or others. *Id.* 105 S.Ct. at 1699, 1701.

The *Garner* Court noted that the existence of a Fourth Amendment unlawful seizure was to be determined by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment inter-

ests" against "the importance of the governmental interests alleged to justify the intrusion". *Id.* at 1699.

In the present case, the plaintiff urged that, notwithstanding the existence of probable cause to support his apprehension, his personal interest to be free from harm or inflicted injury even during the course of his arrest outweighed the officers' interest in using force to place him into custody. While an individual's interest in being free from bodily harm is of significant importance, such an interest does not, in every instance, transcend the government's interest in apprehending criminal suspects.

Indeed, the government's interest in effective law enforcement justifies the use of force to subdue and arrest suspects. If police officers were foreclosed from the use of force to effect the arrest of criminal suspects, it is doubtful that any suspect would peaceably submit to arrest. Thus, an officer's authority to apply force when necessary both deters criminals from resisting arrest and permits law enforcement officials to act efficiently in apprehending offenders. Accordingly, a plaintiff must assert and prove that the arresting officers intended to use excessive force in effecting his arrest in order to prevail in a § 1983 action for deprivation of Fourth Amendment rights.

This circuit has consistently adhered to the principle that "[s]ection 1983 does not provide a remedy for every intrusion by a police officer upon a citizen's bodily integrity." *Lewis v. Downs*, 774 F.2d 711 (6th Cir.1985) *citing Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981). In *Lewis*, this circuit provided the following guidelines for determining whether a police officer's use of force in effecting an arrest violated the due process clause of the Fourteenth Amendment:

> In determining if a police officer's conduct rises to the level of a constitutional deprivation, factors such as the need for the force, the relationship between the need and the amount applied, the extent of the injury, and *the motivation of the*

*police officer in applying the force* must be considered. *E.g. Johnson v. Glick*, 481 F.2d 1028, 1033, (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Finally, the circumstances surrounding the use of force must be carefully considered, *Shillingford*, 634 F.2d at 265 ("Actions permissible in controlling a riotous mob or in dealing with a life-threatening situation might weigh differently when taken against a peaceful pedestrian."), and the intrusion must not be subject to unrealistic *post hoc* evaluations, *cf. United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605 (1985) ("A court ... should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing.").

*Lewis*, 774 F.2d at 713 (emphasis added). The policy against unrealistic *post hoc* evaluations of police conduct applies equally to an excessive force claim predicated upon a violation of the Fourth Amendment. Where, as here, the jury's responses to the special interrogatories patently disclosed that the officers were acting pursuant to probable cause and that the plaintiff was unable to demonstrate that the arresting officers were motivated by an intent to use excessive force, the plaintiff failed to prove that he was subjected to a deprivation of constitutional magnitude.

For the reasons stated above, I would conclude that the jury's answers to the special interrogatories were irreconcilably inconsistent and remand the case for retrial.