61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rose Ann ROTHENBUSCH, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY, Defendant-Appellee.
 No. 93-3945.
 United States Court of Appeals, Sixth Circuit.
 July 20, 1995.
 
 Before: GUY, BOGGS, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Rose Ann Rothenbusch brought this action against defendant Ford Motor Company alleging sexual harassment, sexual discrimination, and retaliation in her discharge from employment, in violation of Title VII and Ohio law. A jury returned a verdict for Ford on the state law charges, and the court dismissed the federal law charges. The court subsequently denied Rothenbusch's motion for a new trial on the state law claims. Based on the following discussion, we affirm.
 
 I.
 A. Factual History
 
 2
 This case appears to be the classic story of workplace romance turned sour. Rothenbusch worked her way up from a clerical worker for Ford Motor Company in 1973 to a line supervisor for Ford's transmission plant in Batavia, Ohio--a position she held until being discharged in 1991. She met Fred Meyer, another supervisor at Ford, and eventually married him in 1983. In July 1990, they separated and filed a petition for divorce. A series of difficulties erupted and each had the other arrested on more than one occasion. At work, Meyer began to make degrading remarks to her, such as "whore" and "slut," and, at times, followed her as she attended to her duties.[1]
 
 
 3
 Rothenbusch informed a Ford supervisor, James W. Brown. When Brown and Meyer's supervisor interviewed Meyer, he denied all accusations. Brown also interviewed a possible witness, who failed to identify any wrongdoing by Meyer. Brown warned Meyer to keep his personal business out of the plant and to stay away from Rothenbusch on Ford property.
 
 
 4
 Beginning in September 1990 and continuing through the fall, copies of posters and adulterated greeting cards began appearing in the plant. These materials contained sexual innuendos, partial nudity, and insults aimed at Rothenbusch. At least one poster contained a graphic illustration of a sexual act along with Rothenbusch's married name, Rose A. Meyer. Plaintiff believed that Meyer was responsible for displaying these materials, and informed Brown about the posters on several occasions. She did not, however, give any of the materials to Brown.
 
 
 5
 Brown interviewed Meyer several times about the allegations, but repeatedly received only statements of denial. Brown again told Meyer to keep his personal business out of the plant. With no other witnesses or leads, Brown did not investigate further.
 
 
 6
 On September 27, 1990, Rothenbusch and Meyer had a heated exchange in the plant cafeteria. Brown told them both to keep their personal problems out of the plant. During this time period, Rothenbusch began psychological counseling for emotional difficulties resulting from problems outside of work.
 
 
 7
 In October 1990, Rothenbusch observed more insulting posters, and reported this to Evan Slater, an employee relations representative. Ford discovered several posters and promptly removed them. Again, Meyer denied responsibility, and, again, Brown told both Meyer and Rothenbusch to keep their personal problems out of the plant.
 
 
 8
 On November 2, 1990, Rothenbusch took a voluntary medical leave from her position at Ford because of stress and emotional difficulties. She continued to receive psychiatric counseling during her leave, and returned to work on January 7, 1991.
 
 
 9
 In early April 1991, Rothenbusch and her supervisor Carol Porter got into an argument. She was subsequently transferred from the second shift to the third shift. On May 16, 1991, she wrote a letter to Brown explaining why she felt compelled to file a charge of sexual harassment. On May 17, 1991, she filed charges of sexual harassment with the Equal Employment Opportunity Commission (EEOC) and the Ohio Civil Rights Commission (OCRC).
 
 
 10
 On May 19, 1991, Porter called Rothenbusch into work. In the course of her duties, Rothenbusch used a scooter to drive around the plant. The scooter had grease on the driver's seat. She then realized that she had grease on her pants and got upset, believing that Meyer was responsible for the grease--although he would have had a difficult time knowing which particular scooter she would use on that day. Later that day, Rothenbusch came upon Meyer while she was driving her scooter, and sprayed him in the face with mace or a mace-like chemical.
 
 
 11
 Meyer reported the incident to plant security, who then interviewed Rothenbusch. She denied that she had sprayed any chemical substance in Meyer's face. Brown investigated the incident, and confirmed through eyewitnesses that Rothenbusch had sprayed Meyer.[2] Ford suspended Rothenbusch with pay pending the outcome of the investigation.
 
 
 12
 Ford received a copy of the EEOC charge on May 20, 1991. On May 21, Brown met with Rothenbusch to discuss her sexual harassment allegations, and she, for the first time, provided the name of a witness who had observed Meyer hanging offensive posters. Through an interview with the witness on May 26, Brown learned that the witness had seen Meyer hang posters on two occasions.
 
 
 13
 On May 30, 1991, Brown sought approval from Ford's divisional employee relations office in Detroit to fire Rothenbusch based on her assault on Meyer, which Brown concluded, was an unprovoked, premeditated attack with an unauthorized substance.[3] Rothenbusch was then discharged.
 
 
 14
 In the fall of 1991, Ford determined that Meyer had violated its policy against sexual harassment due to his probable involvement in hanging two posters in the plant in the fall of 1990, and issued a written letter of reprimand to him.
 
 B. Procedural History
 
 15
 Rothenbusch brought this action against Ford under Title VII, parallel provisions of Ohio law, and a theory of intentional infliction of emotional distress.[4] From February 3, 1993, to February 16, 1993, the plaintiff's state law claims were tried before a jury, and her Title VII claims were tried before the district court. At the close of the plaintiff's case, the court dismissed Rothenbusch's claim of intentional infliction of emotional distress. The jury returned a verdict for Ford finding no harassment, discrimination, or retaliation under Ohio law. The court made a similar finding and dismissed the Title VII claims. Rothenbusch then moved for a new trial on the state law claims, and the court denied the motion. She appeals based on alleged errors regarding sufficiency of evidence, jury instructions, jury confusion, and exclusion of evidence.
 
 II.
 
 16
 Rothenbusch argues that the trial court erred in its jury instruction on harassment by stating that harassment must be based on sex, and not merely personal animosity. We review jury instructions to ensure that "the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law." Clarksville-Montgomery County School Sys. v. United States Gypsum Co., 925 F.2d 993, 1003 (6th Cir.1991) (citation omitted).
 
 
 17
 The jury instruction in question was stated as follows:
 
 
 18
 To show that the alleged harassment was based on sex, Plaintiff must prove by a preponderance of the legal evidence that but for the fact of her sex, she would not have been the object of unlawful harassment. Harassment is prohibited by Ohio law only if it is based on being male or female. Personal animosity is not the equivalent of sexual harassment and is not proscribed by law.
 
 
 19
 The jury requested clarification of the instruction: "Does the word 'equivalent' infer that personal animosity does not carry as much weight as sexual harassment, or does equivalent mean that acts of personal animosity cannot be construed as sexual harassment?" The court responded by stating that "[a]cts of personal animosity, in and of themselves, are not sexual harassment. The harassment must be because of sex. Please review the entire charge...."[5]
 
 
 20
 The four elements of a hostile environment claim are that:
 
 
 21
 (a) the employee [is] a member of a protected class;
 
 
 22
 (b) the employee was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature;
 
 
 23
 (c) the harassment complained of was based upon sex; and
 
 
 24
 (d) the existence of respondeat superior liability.
 
 
 25
 Rabidue v. Osceola Refining Co., 805 F.2d 611, 619-20 (6th Cir.1986) (emphasis added), cert. denied, 481 U.S. 1041 (1987).[6] The jury instruction was consistent with this statement of the law and sufficiently clear to avoid confusion. "A jury instruction which states the law with substantial accuracy and fairly submits the issues to the jury will not provide grounds for reversal." Clarksville, 925 F.2d at 1003 (citation omitted). Accordingly, we find no error in the court's instruction and clarification.
 
 III.
 
 26
 Next, Rothenbusch argues that the factual findings regarding her claims of harassment, discrimination, and retaliation were clearly erroneous, and, thus, the trial court erred by not granting a new trial. We review a denial of a new trial motion under an abuse of discretion standard. United States v. L.E. Cooke Co., 991 F.2d 336, 343 (6th Cir.1993). A district court abuses its discretion when it relies on clearly erroneous findings of fact. Black Law Enforcement Officers Ass'n v. City of Akron, 824 F.2d 475, 479 (6th Cir.1987). As the Supreme Court has held, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).
 
 
 27
 This court accords substantial deference to jury verdicts. Davis v. Mutual Life Ins. Co., 6 F.3d 367, 374 (6th Cir.1993), cert. denied, 114 S.Ct. 1298 (1994). "We may neither weigh the evidence, pass on the credibility of the witnesses, nor substitute our judgment for that of the jury." Id. We must view the evidence in the light most favorable to Ford, drawing all reasonable inferences in its favor. Id.
 
 A. Harassment
 
 28
 Rothenbusch argues that the factual findings regarding sexual harassment were clearly erroneous. The court will only reverse the decision below if each of these findings is clearly erroneous.
 
 
 29
 First, Rothenbusch contends that Ford failed to respond adequately and effectively when it had notice of the sexual harassment. The district court addressed this argument in its order denying Rothenbusch's motion for a new trial, and found that the jury's conclusions were reasonable in light of the inconsistencies in Rothenbusch's testimony, as well as the testimony of the defense witnesses which tended to discredit her story. For example, Brown testified that he investigated every complaint brought to him by Rothenbusch. He also testified that she did not provide corroborating information about the harassment until after the investigation began concerning her assault on Meyer.
 
 
 30
 A review of the record shows that the finding of Ford's adequate and prompt response was not clearly erroneous. The district court did not abuse its discretion in denying the motion for a new trial. Because Rothenbusch has failed to show clear error on this issue, there is no reason to address her remaining allegations of clearly erroneous factual findings on the harassment claim.[7]
 
 B. Sex Discrimination
 
 31
 Rothenbusch contends that the district court should have granted her motion for a new trial because the factual findings regarding her discrimination claim were clearly erroneous.
 
 
 32
 At trial, she contended that she was treated differently than other salaried employees who had committed assaults. The jury found no discriminatory treatment and concluded that Ford "proved by a preponderance of the legal evidence that it would have made the same decision to terminate plaintiff even if it had not considered her sex." Denying the motion for a new trial, the district court concluded that the jury verdict was "reasonable since the trial record contained evidence that Plaintiff was discharged--not because of her sex--but because she sprayed a mace-like substance at her ex-husband on July 19, 1991."
 
 
 33
 The district court did not abuse its discretion in denying the motion. Rothenbusch failed to show that the findings below were unsupported by the record. Although Rothenbusch presented evidence that Ford did not discharge some male employees who engaged in workplace assaults, she failed to show that these employees were "similarly-situated in all respects." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir.1992) (emphasis in original). For example, Ford did not fire two male employees who committed assaults involving provocation and heat-of-the-moment passion. In Rothenbusch's case, however, Ford fired her for committing a premeditated assault. The factual findings regarding the discrimination claim were not clearly erroneous.[8]
 
 C. Retaliation
 
 34
 Rothenbusch also contends that the factual findings pertaining to her retaliation claim were clearly erroneous. She argued at trial that Ford discharged her in retaliation for her filing a discrimination charge with the EEOC and the OCRC. In support, she cited the fact that she was fired only a few days after filing her charge. Additionally, she noted that the report of her filing was made known to the employment authorities in Ford's Detroit office.
 
 
 35
 The record supports the factual findings on the retaliation claim. Rothenbusch assaulted a fellow employee the day before Ford received the EEOC charge. It was reasonable for the jury to conclude that her assault was the impetus for Ford's initiation of a detailed investigation and its ultimate decision to discharge her. Moreover, it is not per se improper for an employer to include a record of an employee's discrimination charges in that employee's file. The district court did not abuse its discretion in denying the motion for a new trial regarding her retaliation claim.
 
 IV.
 
 36
 Next, Rothenbusch argues that the trial court improperly excluded evidence. We will reverse on this ground only if the district court abused its discretion. United States v. Bowling, 900 F.2d 926, 934 (6th Cir.) (citing Martin v. Weaver, 666 F.2d 1013, 1020 (6th Cir.1981), cert. denied, 456 U.S. 962 (1982)), cert. denied, 498 U.S. 837 (1990). An abuse of discretion is defined as "a definite and firm conviction that the trial court committed a clear error of judgment." Monette v. AM-7-7 Baking Co., 929 F.2d 276, 280 (6th Cir.1991).
 
 
 37
 First, Rothenbusch argues that the court erroneously excluded a document from the files of the Ohio Civil Rights Commission which showed that Ford considered assault and sexual harassment to be offenses of comparable seriousness. The district court excluded the document because it was information given to the OCRC in the context of settling a dispute.
 
 
 38
 Courts have upheld the exclusion of such investigatory files which, as one court characterized, often represent a " 'mish-mash of self-serving and hearsay statements and records....' " Tulloss v. Near North Montessori School, 776 F.2d 150, 154 (7th Cir.1985) (quoting Gillin v. Federal Paper Board Co., 479 F.2d 97, 99 (2d Cir.1973)). Accordingly, the district court did not abuse its discretion in excluding this document.
 
 
 39
 Rothenbusch also sought to introduce evidence concerning an assault in 1992 committed by a male employee, Vaughn Stinson, who was not discharged. Stinson had assaulted a Japanese contractor who was working at the Ford plant. The court excluded the evidence based on its finding that the evidence was highly prejudicial and only marginally relevant. Additionally, the court noted that the record already contained evidence of Ford's treatment of assaults involving male employees.
 
 
 40
 The district court denied Rothenbusch's motion for a new trial on this point. Specifically, the court found that the incident was not similar in all respects because Stinson was an engineer and not a supervisor, and his assault occurred "after plaintiff's attack upon her ex-husband and after the decision to discharge her was made."
 
 
 41
 In Mitchell v. Toledo Hosp., we set forth a rigorous test for showing that two employees are "similarly-situated":
 
 
 42
 [T]o be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.
 
 
 43
 964 F.2d at 583 (citations omitted). The court did not abuse its discretion in holding that Rothenbusch and Stinson were not similarly situated. Rothenbusch's assault was premeditated, while Stinson's was in the heat of the moment; Rothenbusch used a chemical weapon, while Stinson used his hand; and Rothenbusch was a supervisor, while Stinson was an engineer. Additionally, the court had already permitted evidence of other assaults.
 
 V.
 
 44
 Using special verdicts, the jury found that Rothenbusch failed to prove any of the elements of a hostile environment claim. It also found that she failed to prove any damages proximately caused by Ford's termination of her employment. Rothenbusch argues that jury's answers on these questions were unsupported by the evidence, and, thus, represent jury confusion.
 
 
 45
 The district court did not abuse its discretion in denying the motion for a new trial regarding these alleged errors. Even if Rothenbusch could show confusion or inconsistency regarding one or two of the twenty-one special verdicts, the overall verdict was clear and supported by the record as a whole. See Waggoner v. Mosti, 792 F.2d 595, 596-97 (6th Cir.1986) ("it is incumbent upon a trial court, as well as an appellate court, 'to reconcile the answers if possible under any view of the evidence' ").
 
 
 46
 AFFIRMED.
 
 
 
 [1]
 Meyer also presented testimony that Rothenbusch called Meyer a "bastard" and a "son of a bitch," and told a co-worker that Meyer was impotent. Meyer also complained that two derogatory posters referring to him were hung up in the plant
 
 
 [2]
 Rothenbusch admitted in her deposition and at trial that she had sprayed Meyer
 
 
 [3]
 Brown also included information about the history of Rothenbusch and Meyer's marital conflicts, her allegations against Meyer, Meyer's repeated denials, plaintiff's medical leave, and plaintiff's filing of charges with the EEOC and the OCRC on May 16, 1991
 
 
 [4]
 She also brought claims for age discrimination and negligent infliction of emotional distress, but later dropped them voluntarily
 
 
 [5]
 At the charge conference, Rothenbusch's counsel seemed to agree with the "personal animosity" aspect of the charge. He stated: "I don't have any problem with the statement that 'personal animosity is not the equivalent of sexual harassment as proscribed by law,' in that general concept. What I have a problem with is the last phrase of the first sentence, that 'she would not have been the object of harassment but for the fact of her sex.' "
 
 
 [6]
 At the time of trial, the law in this circuit also required a plaintiff to show that the environment "seriously affected [her] well-being." Rabidue, 805 F.2d at 619-20. The Supreme Court rejected that requirement in Harris v. Forklift Sys., 114 S.Ct. 367 (1993) (holding that hostile environment claim does not require concrete psychological injury)
 
 
 [7]
 Additionally, she asserts that all of the harassment findings were tainted by the jury instruction regarding "personal animosity," as discussed in the previous section. There was no error in the jury instruction, and, thus, this assertion is without merit
 
 
 [8]
 Ford argues that the district court did not have jurisdiction over the sex discrimination claim. We have no reason to address this argument because we affirm the decision below in favor of Ford