Everett A. McCOLLUM and Irvin Ray Crist, Appellees,

v.

Donald W. STAHL, in his capacity as Sheriff of Mecklenburg County and Individually, Appellant.

No. 77–1136.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1978.

Decided July 19, 1978.

Robert P. Johnston, Charlotte, N. C. (James E. Walker, Douglas M. Martin, Walker & Palmer, Charlotte, N. C., on brief), for appellant.

William K. Diehl, Jr., Charlotte, N. C. (James, McElroy & Diehl, Charlotte, N. C., on brief), for appellees.

Before BRYAN, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

Reversal is sought by Donald W. Stahl of judgments against him, a County Sheriff of

North Carolina, in favor of Everett A. McCollum for $65,000 and of Irvin Ray Crist for $15,000, as damages for Stahl's discharge of them as his deputies. Both awards are predicated on his alleged invasion, under color of State law, of their civil rights, McCollum for not voting for him, Crist for reproving him for firing McCollum. 42 U.S.C. § 1983. We reverse for procedural errors at trial.

Plaintiffs declare on the defendant's termination of them as incursions upon their rights of free speech and due process of law, as well as a breach of the law of North Carolina. 42 U.S.C. § 1983; First and Fourteenth Amendments; N.C.G.S. § 163–271. Viewed most favorably for the plaintiffs, the evidence established these facts:

During his term of office as Sheriff of Mecklenburg County, expiring the first Monday in December, 1974, Stahl had appointed McCollum and Crist as his deputies. He was reelected on November 4, 1974 for another four years. The next day the Sheriff called McCollum into his office and asked him, "Sam, is it true that you pulled a straight Democratic lever?", meaning he voted against Stahl, a Republican, for Sheriff. When the deputy replied, "Yes, Sir", Stahl responded, "Sam, I just don't need people like you, get the hell out". This was McCollum's discharge.

Soon afterwards, on learning of the separation of McCollum from the force, Crist went into the Sheriff's office and inquired if it was true that McCollum had been discharged by Stahl "for allegedly voting Democratic, allegedly voting against you?" Acknowledging it, the Sheriff said, "I don't want to hear another word from you", and added that if Crist wished to keep his job he should leave the office. Crist's recollection is this: "I told the Sheriff I was a grown man accountable for my own actions, and I can't be threatened with my job and if he wanted to fire me that was his prerogative. He told me I was fired". A brief physical scuffle ensued when Crist refused to leave and to surrender his identification card and other police property.

For McCollum's severance the Sheriff was accused of a violation of the North Carolina Voter Intimidation Statute, convicted and fined. Voter Intimidation Act N.C.G.S. § 163–271. As a result McCollum was reinstated and given back pay on February 3, 1975. He remained in office until April 23, 1976, when he resigned to accept employment with the fire department in the City of Charlotte.

At trial both plaintiffs gave evidence of damages, monetary and otherwise, incident to their dismissals by the Sheriff.

### The Crist Case

Counsel have stipulated that this case went to the jury, as to Crist, on the following questions and that on them the following answers were returned:

"1. Did the defendant wrongfully discharge:
"(b) The Plaintiff Crist
"ANSWER: No

"2. If so, what amount of damages therefor should the Defendant pay:
"(b) To the Plaintiff Crist
"ANSWER: [no figure inserted]

"3. Was the discharge of either or both the Plaintiffs maliciously, wantonly or oppressively done:
"(b) As to the Plaintiff Crist
"ANSWER: Yes

"4. If so, what amount, if any, should the Defendant pay as punitive damages:
"(b) To the Plaintiff Crist
"ANSWER: $15,000"

Manifestly, the jury found no *liability* of Sheriff Stahl for removing Crist, but nevertheless assessed Stahl with damages. Thereupon the defendant sought dismissal of the Crist claim. The motion was denied. The District Judge observed that while the verdict was inconsistent, this could have been due to his failure to instruct that the jury should not answer the subsequent questions if the first one was not answered in favor of the plaintiff. Over Sheriff Stahl's objection the jury was sent back to reconsider its answers and reappeared with the following responses:

"1. Did the Defendant wrongfully discharge:

"(b) The Plaintiff Crist?

"ANSWER: Yes

"2. If so, what amount of damages therefor should the Defendant pay:

"(b) To the Plaintiff Crist

"ANSWER: $3,750.00

"3. Was the discharge of either or both Plaintiffs maliciously, wantonly or oppressively done:

"(b) As to the Plaintiff Crist?

"ANSWER: Yes

"4. If so, what amount, if any, should the Defendant pay as punitive damages:

"(b) To the Plaintiff Crist

"ANSWER: $3,750.00"

Appellant Stahl now assigns error to the resubmission of the questions to the jury, contending that since its first response was altogether dispositive of Crist's claim, the second answers were meaningless. The remaining questions did not go to the determinant issue—liability. They were surplusage, to be disregarded as no longer having place in the litigation. When the jury found no unlawfulness the case was over; final judgment should then have gone for the defendant.

█ Of course, the taking of a special verdict was appropriate, F.R.Civ.P. 49, but the resubmission was procedurally impermissible. At the time of the recommitment there was before the court a decisive verdict, an unequivocal finding of no wrongful conduct by Stahl.

Moreover, this is confirmed by the answer to the immediately following question, 2(b), refusing Crist compensatory damages. These excusals of Stahl were not oversights or misunderstandings. The jury was not unfamiliar with the procedure—not to answer in damages if liability was not found—for it had exhibited this knowledge in McCollum's case.

The inescapable implication of the remand by the trial court was that nothing was amiss in the computation of damages, but that the award demanded justification.

Thus the remand of the questions to the jury was tantamount, in its effect, to a direction to the jury to find liability in order to warrant the award of damages.

Finally, as a matter of law the return of the Crist questions was not allowable. The initial submission was under F.R.Civ.P. 49(a). It does not provide for a resubmission as does Rule 49(b). The point is emphasized in *Griffin v. Matherne*, 471 F.2d 911, 917 fn. 6 (5 Cir. 1973) with the notation:

"6. Rule 49(a) unlike 49(b) does not provide for resubmission. Under Rule 49(b) the jury returns answers to special interrogatories and a general verdict. To enable it to perform this dual function, the former primarily a factual undertaking and the latter an application of the law to the facts, the jury must be fully charged, and the rule itself provides for reconsideration by the jury or for new trial if there is inconsistency between one or more special answers and the general verdict. Rule 49(a), under which the jury's function is solely fact-finding with only such instruction as necessary for it to discharge that function, does not provide for jury reconsideration of inconsistent answers."

Again, in *Halprin v. Mora*, 231 F.2d 197, 200 (3 Cir. 1956), a parallel to the *Crist* case, the Court gave judgment for defendants upon the jury's ascertainment in a special verdict of no negligence on the part of either of the two defendants but at the same time including answers fixing damages for the plaintiff.

Even under Rule 49(b)—in which interrogatories as well as a general verdict are simultaneously laid before the jury—the proper disposition is a judgment for the defendant. This was explained in *Ninnicht v. Evans, Inc.*, 477 F.2d 133, 135 (5 Cir. 1973), with the posture of the proceedings akin to that presently under consideration. There, on the first and second interrogatories, the jury found no negligence or unseaworthiness on the part of the defendants,

but in the last answer it found damages. On appeal, the District Court's judgment for the defendants was affirmed, the Court commenting:

"We are of the opinion that those findings left the District Court with no room to adopt any other course. In the absence of unseaworthiness or negligence, damages could not be awarded. The jury should not have responded to Interrogatory No. 11 [fixing damages]. The fact that it mistakenly did so could not change the answers to the prerequisite questions, upon which any damages at all had to live or die."

### The McCollum Case

While the two claims were submitted together on questions to the jury, now to avoid repetition the questions and answers just discussed in the *Crist* case are omitted, and only those in the *McCollum* case follows:

"1. Did the defendant wrongfully discharge:

(a) The plaintiff McCollum?
ANSWER: Yes

"2. If so, what amount of damage therefor should the defendant pay:

(a) To the plaintiff McCollum
ANSWER: $50,000.00

"3. Was the discharge of either or both plaintiffs maliciously, wantonly or oppressively done:

(a) As to the plaintiff McCollum?
ANSWER: Yes

"4. If so, what amount, if any, should the defendant pay as punitive damages:

(a) To the plaintiff McCollum?
ANSWER: $15,000.00"

After all of the evidence had been adduced for each party, the plaintiffs moved for directed verdicts. That for Crist was denied, but McCollum's was granted. Thereupon, the jury was instructed to find for McCollum on the issue of whether he was wrongfully discharged.

■ This was error. Sheriff Stahl had included among his defenses, and had requested an instruction to the jury, that in the peculiar circumstances he had the right to terminate McCollum at any time and this without offense to the freedom of speech or other civil privileges of McCollum. Stahl was entitled to have the jury decide whether McCollum was subject to be released at the will of the Sheriff because of the character of McCollum's position, the nature of its responsibilities and his identification with the Sheriff.

To begin with, the General Statutes of North Carolina, § 153A–103 declares:

" . . .

(1) Each sheriff . . . elected by the people has the exclusive right to hire, discharge, and supervise the employees in his office . . .."

Without a contract of any kind, the deputies were chosen only for a year during the Sheriff's term. Each took an oath of office annually at the beginning of the calendar year of his service. They were beneficiaries of his political patronage, and actual loyalty to the Sheriff was one of the prerequisites of an appointment. However, if he was *not* simply a menial employee or *not* merely "a nonpolicymaking, nonconfidential government employee" he was dischargeable at will. *Elrod v. Burnes*, 427 U.S. 347, 375, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (Mr. Justice Stewart concurring).

In determining the deputy's status vis-a-vis this test of dischargeability, the jury could consider that his relationship to him was so close that illegal conduct on the deputy's part could expose the Sheriff to civil liability. Indeed, in law he occupied a status of *alter ego* of the Sheriff officially. The jury could well have believed McCollum acted in a confidential capacity with the Sheriff that demanded loyalty of him. This might even have been thought by the jury to include joint decision-making. Thus, the deputy could have appeared to the jury as a policy-maker, particularly if the jury saw his duties unlimited.

At all events, appellant should have had the benefit of the jury's deliberation upon this evidence in determining whether Stahl

should be exonerated of wrongfulness in discharging McCollum. It was not a resolution to be made by the trial judge. This is the teaching of *Elrod v. Burnes*, 427 U.S. at 368, 96 S.Ct. 2673. The Court there emphasized that the determination of the quality of an employee's position is a matter of proof. To this point the Court cited *Illinois State Employees Union v. Lewis*, 473 F.2d 561, 574 (1972), cert. denied 1973, 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 590, wherein the Seventh Circuit stated:

> "Plaintiffs properly do not challenge the public executive's right to use political philosophy or affiliation as one criterion in the selection of policy-making officials. Moreover, considerations of *personal loyalty, or other factors besides determination of policy,* may justify the employment of political associates in certain positions. It is difficult to believe, however, that any such justification would be valid for positions such as janitors, elevator operators or school teachers. *Thus, again justification is a matter of proof or at least argument directed at particular kinds of jobs.*" (Accent added.)

In fine, the jury should have been told, under appropriate instructions of the court, to evaluate the relationship between Sheriff Stahl and deputy McCollum so as to adjudge whether the discharge was illegal. The peremptory direction to the jury deprived Stahl of his entitlement.

For the errors at trial discussed *infra*, the judgment in favor of Crist and against Stahl will be vacated and final judgment will here be entered for Stahl, and the judgment in favor of McCollum and against Stahl will be reversed and that action remanded for a new trial.

VACATED IN PART WITH FINAL JUDGMENT and REVERSED IN PART and REMANDED FOR NEW TRIAL.