COLEMAN, Circuit Judge.
I
This case arises under the Longshoremen’s and Harbor Workers’ Compensation Act, 33 U.S.C. § 901 et seq. The administrative law judge found that Oswald A. Kilsby (Respondent) became permanently and totally disabled as a result of injuries suffered in the course of his employment on an offshore oil rig. This decision was affirmed on appeal to the Benefits Review Board. The employer now appeals the decision of the Benefits Review Board, contending that Mr. Kilsby is not permanently and totally disabled.[1] The decision of the Board is affirmed.
*1005 II
Mr. Kilsby was born on April 28, 1923. Although the respondent’s formal education is limited, having dropped out of school in the seventh grade, he has had extensive experience as an oil driller. When he was sixteen years old he began work as a “roustabout”, after which he steadily progressed in rank until, in 1965, he became an oil rig manager. This type of work frequently required that Kilsby be employed far from his home in West Columbia, a Texas town of 3,500, where respondent and his family have lived for over forty years.
Kilsby was managing an offshore oil rig on March 24, 1973, when he suffered a massive heart attack. He was hospitalized for approximately twenty days. Rehabilitation has been slow, and of limited success. Respondent continues to experience chest pains, becomes fatigued upon the slightest exertion, and sees his doctor on almost a monthly basis.
The administrative law judge (AU) found that the respondent’s disability arose out of and in the course of his employment.[2] In addition, the ALJ found respondent to be permanently and totally disabled after determining that he would be “unable to return to his oil field work (tool pusher or the somewhat similar jobs offered by the employer) because of his physical limitations”.[3] The Benefits Review Board affirmed, reasoning that the respondent was physically unable to perform any of the jobs that the petitioner had available for Mr. Kilsby and that the petitioner failed to prove that there actually were jobs available to respondent in his locality that he could perform. - BRBS -, BRB No. 7&-433 (May 18, 1977).
We must affirm the decision of the Benefits Review Board if it has correctly concluded that the decision of the administrative law judge is supported by substantial evidence on the record as a whole and is in accordance with the law. Watson v. Gulf Stevedore Corp., 5 Cir. 1968, 400 F.2d 649, cert. denied, 394 U.S. 976, 89 S.Ct. 1471, 22 L.Ed.2d 755 (1969); 33 U.S.C.A. § 921(b), as amended.
It is clear that' the AU’s decision is in accordance with the law. The employer contends that Mr. Kilsby’s disability is partial and not total because he is physically capable of performing sedentary work.[4] “Disability” is defined in the Longshoremen’s and Harbor Workers’ Compensation Act as an
incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.
33 U.S.C.A. § 902(10). The Act neither provides a definition of nor a standard by which to determine what constitutes “total” as opposed to “partial” disability. It is well settled in this Circuit, however, that the “degree of disability ‘cannot be measured by physical condition alone. Other factors must be considered, such as age, education, *1006 industrial history and the availability of work which the [injured worker] can do’.” Watson v. Gulf Stevedore Corp., 5 Cir. 1968, 400 F.2d 649, 653, cert. denied, 394 U.S. 976, 89 S.Ct. 1471, 22 L.Ed.2d 755 (1969). In Godfrey v. Henderson, 5 Cir. 1955, 222 F.2d 845, we adopted as an operative definition of total disability the
complete incapacity to earn wages in the same or any other employment. . the words “in the same or any other employment” presupposes a situation where a man can secure employment.
Id. at 849. Thus, it is possible that an individual could be found to be totally disabled for the purposes of the Act and yet possess the physical ability to do certain light work. Id. at 848 — 49. In Watson, for example, there was medical evidence that it was “ ‘reasonably and medically probable’ ” that an amputee would be fully rehabilitated and capable of returning to a supervisory position. 400 F.2d at 653. However, it was observed that, under his present condition, Watson would be unable to return to his supervisory work and that, given his age, education, and skills, he would be unable to secure or perform other kinds of work. Id. at 654. On this basis we found substantial evidence to support the conclusion of total disability.
In Cunnyngham v. Donovan, 5 Cir. 1964, 328 F.2d 694, we found the rejection of an amputee’s claim of permanent total disability to be in error when he had held various jobs for a six year period following his injury but these were only of a temporary nature “partly, at least, because of the duration and extent of his injury”. Id. at 697.
Finally, in Godfrey v. Henderson, 5 Cir. 1955, 222 F.2d 845 a reclassification of an amputee’s disability status from temporary total disability to permanent partial disability was found to be erroneous even though the medical evidence indicated that the injured worker would possess the physical ability to perform light work if he had an artificial leg. We observed the prospect of future employment was highly speculative given his age, education, skills, and the risk of incurring further injury. Id. at 848.
It is thus seen that an individual may be totally disabled for purposes of the Act when physically capable of performing certain work but otherwise unable to secure that particular kind of work.
We now turn our attention to the facts of this case to determine whether there is substantial evidence on the record as a whole to support the ALJ’s finding of total disability. Substantial evidence is evidence that provides “a substantial basis of fact from which the fact in issue can be reasonably inferred . . . more than a scintilla . . . more than create a suspicion . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion”. NLRB v. Colum-bian Enameling and Stamping Co., 306 U.S. 292, 299-300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). It is “immaterial that the facts permit the drawing of diverse inferences”. Cardillo v. Liberty Mutual Co., 330 U.S. 469, 478, 67 S.Ct. 801, 807, 91 L.Ed. 1028 (1947). Although it is “something less than the preponderance of the evidence”, Brennan v. National Hotel Co., 5 Cir. 1973, 476 F.2d 17, 21, there must be “enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury”. NLRB v. Columbian Enameling & Stamping Co., 306 U.S. at 300, 59 S.Ct. at 505.
The medical testimony of the two doctors in attendance upon Mr. Kilsby since his illness is to the effect that he is physically capable of performing sedentary work. The record reveals, however, that due to his illness he has been unable to find any work which he can physically perform. First, both doctors agree, and the employer does not dispute, that respondent is no longer physically capable of performing his former job as rig manager. Second, Kilsby also has been unsuccessful in locating other types of work. The Texas Rehabilitation Commission, for example, was unable to find respondent a job because of his heart condition. Similarly, he was turned down for jobs at a West Columbia service station and grocery store because of his illness. In *1007 the summer of 1975, however, Kilsby found a position at a supply warehouse. He was responsible for answering the telephone and determining whether items requested by customers were in stock. Even this slight exertion left him fatigued and, upon his doctor’s advice, he resigned after three weeks on the job. He returned to this position a month later but met with the same difficulties and, again, quit.
The respondent, having demonstrated an inability to perform either his former job or any other work due to his heart condition, has established disability for purposes of the Act. Under such circumstances the burden shifts to the employer to demonstrate the availability of work that the injured employee can perform. American Stevedores, Inc. v. Salzano, 2 Cir. 1976, 538 F.2d 933, 935-36. Petitioner has failed to satisfy this burden.
Seven days prior to the hearing before the ALJ — three years after respondent’s heart attack — petitioner offered Mr. Kilsby two positions. The first position is situated at petitioner’s Houston shipyard, located over 65 miles from West Columbia. This position entails acting as yard representative, making an inventory of petitioner’s equipment, and coordinating the repairs of such equipment. Mr. Kilsby would be provided with an air conditioned office. The second position is situated in Morgan City, Louisiana, approximately 200 miles from West Columbia. This position entails nighttime work at job locations that alternate between petitioner’s principal yard in Morgan City and another facility of petitioner’s that is a ten minute drive away. In this position Mr. Kilsby’s primary responsibility would be to handle communications with petitioner’s offshore and inshore drilling operations. In addition, Mr. Kilsby would be responsible for coordinating the resolution of any problems that may arise with respect to these operations.
Whether petitioner’s job offers represent actual job opportunities to respondent is, at best, highly speculative. First, there was testimony at the hearing that the employer’s job description of rig manager was misleading in that the description would not mention the heavy labor that was, in fact, often required of the manager. It would not be unreasonable for the ALJ to infer that the two positions offered respondent would similarly necessitate some strenuous activity.[5] It is undisputed that Kilsby is physically incapable of undertaking such labor.
Even if it should be assumed that the descriptions given by petitioner of the two job offers are correctly described, we nonetheless find substantial evidence to support the conclusion that Kilsby does not possess the physical ability to handle either position. The Houston shipyard position is strikingly similar to the warehouse job Kils-by unsuccessfully undertook in 1975.[6] Like the Houston shipyard job, Mr. Kilsby also had an air conditioned office, acted as the employer representative, and was responsible for the inventory and repairs of equipment when he held the warehouse job. In addition, the Houston shipyard position would require a good deal of walking, an activity with which Mr. Kilsby has experi *1008 enced a great deal of difficulty. In fact, Kilsby testified that one of the reasons he quit the warehouse job was because of the walking he had to do.
Although the Morgan City job differs from both the Houston shipyard job and the warehouse job, it has a number of features which, based on Mr. Kilsby’s post-illness experience, suggests that he also would be unable to physically perform this job. The Morgan City position alternates between two different locations and therefore would necessitate that Mr. Kilsby move from place to place. Yet he testified at the hearing that, based upon a conversation with his doctor, he does not drive a car alone, even for the short twenty-five mile trip to his doctor. That short trip left him tired and nervous and he has found it necessary for someone else to drive him back home. The evidence further indicated that the Morgan City job would involve more responsibility than the warehouse job. Tension was one of the contributing factors to Kilsby’s resignation from his warehouse job. Similarly, both doctors have testified that Kilsby’s physical abilities are restricted by his limited emotional-stress tolerance.
The employer contends, however, that both doctors are in agreement that respondent has the physical ability to perform the duties involved in the jobs offered. Petitioner points out, for example, that both doctors conclude that respondent can and should work. This, however, fails to answer the question whether respondent has the physical ability to perform the two particular jobs offered him by Diamond M Drilling Company.
At best, the medical evidence leads to the conclusion that respondent is unable to perform the Houston shipyard job and may be able to perform the Morgan City job. At worst, the medical evidence leads to the conclusion that respondent is physically incapable of performing either job. Dr. Mas-sin, respondent’s cardiologist, testified that respondent had the physical ability to do sedentary work such as that involved in being a salesman. This opinion was qualified, however, by Dr. Massin’s observation that “perhaps” respondent would be physically capable of working on his feet but only for a “short while” and then only in a “relatively confined area”. (7/26/76 Depo. Massin, p. 9, 12). The Houston shipyard position, Dr. Massin concluded, would “probably push [respondent] a bit”. (7/26/76 Depo. Massin, p. 11).
In response to a question by petitioner, Dr. Massin also testified that respondent would be able to perform a job “like radio operator”. (7/26/76 Depo. Massin, p. 12). However, the Morgan City job entails more than the operation of a radio. Dr. Massin did not offer an opinion whether respondent would be capable of handling the particular job responsibilities involved in the Morgan City job. He did express an opinion, though, of respondent’s ability to deal with some of the features that might be associated with the Morgan City job. For example, Dr. Massin cautioned that emotional stress could pose a danger to Mr. Kilsby. Whether the increased responsibility of the Morgan City position, relative to the warehouse job, would result in a dangerous amount of emotional stress is unclear.
Finally, Dr. Massin concluded that respondent is physically able to drive routinely forty-five minutes to and from work. However, both of the jobs petitioner offered respondent were more than a forty-five minute drive away from respondent’s home. Dr. Massin testified, with reference to the Houston shipyard job, that a sixty-five mile drive through rush-hour traffic is “asking a lot of anybody, I think, and in particular Mr. Kilsby. I think that’s something of a stress.” (7/26/76 Depo. Massin, p. 14-15). With respect to the Morgan City job, Dr. Massin’s testimony concerning respondent’s daily commuting capabilities is uninformative. This particular job would require that Mr. Kilsby drive back and forth between two locations that are ten minutes apart. It is unclear whether respondent would be physically able to engage in this continuous travel between the two locations as well as to commute to and from work on a reasonable basis.
*1009 Dr. Simons, respondent’s treating physician, also testified that he had advised respondent in 1975 to seek some type of employment. Dr. Simons carefully pointed out, however, that Mr. Kilsby was capable physically of holding a job that did not involve “[Ljabor or a great deal of emotional stress”. (7/26/76 Depo. Simons, p. 10). For example, Dr. Simons was concerned with “just how much standing around, this type of thing, he can do. Walking around.” (7/26/76 Depo. Simons, p. 11).
Petitioner also argues that the respondent’s own testimony reveals that the positions offered by petitioner represent job opportunities that respondent is physically capable of performing. An examination of the record requires a contrary conclusion.
Initially, Mr. Kilsby testified that transportation was the only problem with his holding either position offered by petitioner but immediately qualified this statement by noting that Dr. Simons’ approval would be required before he could accept the Houston shipyard job. A similar qualification later was made with respect to the Morgan City job. Finally, respondent concluded that he would be unable to hold either position, based on his past experience with the warehouse job:
I don’t think, with the travel and all the radio and telephoning and inventory,
I don’t believe I could keep up with it. Record at 100.
The ALJ found' respondent to be a credible witness and was entitled to rely on his unequivocable statement of physical disability in concluding that respondent was totally disabled. Similarly, the medical evidence and respondent’s post-injury rehabilitative and work experience provided a reasonable and substantial basis for the ALJ to conclude that respondent would encounter insurmountable physical problems in attempting to undertake either job offered by petitioner and thus to conclude that there was no evidence of actual job opportunities for the respondent, and therefore adjudge respondent to be totally disabled.
Accordingly, the decision of the Benefits Review Board is
AFFIRMED.

. Petitioners concede that Mr. Kilsby suffers from permanent partial disability. The distinction between permanent disability which is partial and that which is total is substantial in terms of the benefits available to the disabled worker. If Mr. Kilsby has a permanent total disability, then he shall be entitled to receive two-thirds of his pre-injury salary for the remainder of his life. 33 U.S.C.A. § 908(a). If, on the other hand, Mr. Kilsby has a permanent partial disability, then he shall receive only two-thirds of the difference between his pre-injury salary and his present wage-earning capacity for the remainder of his life. 33 U.S.C.A. § 908(c)(21).

. The employer originally took the position that Mr. Kilsby’s disability was not causally related to his employment and therefore the injury was not compensable under the Act. 33 U.S.C.A. § 903(a) as amended. Petitioners no longer dispute that Mr. Kilsby’s illness is compensable under the Act.

. The Administrative Law Judge apparently was referring to the jobs in Houston and Morgan City, Louisiana, discussed infra, that the employer offered Mr. Kilsby. Out of context, the Administrative Law Judge’s reference is ambiguous. However, the petitioner only offered respondent two jobs and therefore the Administrative Law Judge must be referring to these two particular jobs.

. On appeal, petitioner maintains that it had proved the availability of two jobs in locations other than West Columbia and that respondent could not be adjudged to be totally disabled, as a matter of law, when he was physically capable of performing either job, if only he would relocate his home in either job area. We do not have occasion to consider whether relocation is required under the Act given our disposition that respondent was physically incapable of performing any of the jobs actually shown to be available.
Similarly, we have no occasion to express our opinion with respect to the Benefit Review Board’s view that the Act does not require relocation. Such view was unnecessary to the Board’s conclusion that respondent was physically incapable of performing any available job.

. In addition, both the permanence and the job requirements of the two positions offered might reasonably be regarded by the ALJ as suspect when these positions were not offered until the eve of the administrative hearing. As we have often observed, in other contexts: “[Ajctions taken in the face of litigation are equivocal in purpose, motive and permanence.” Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28, 33 quoted in James v. Stockham Valves & Fittings Co., 5 Cir. 1977, 559 F.2d 310, 325 n.18, cert. denied, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); Parson v. Kaiser Aluminum & Chemical Corp., 5 Cir., 1978, 575 F.2d 1374.

. It would be reasonable for the Administrative Law Judge to consider Mr. Kilsby’s experiences subsequent to his accident in determining whether Mr. Kilsby was physically capable of performing at either job that petitioner offered. Both doctors that have attended respondent do not feel there has been much improvement in respondent’s condition since shortly after his attack. Therefore the problems experienced by Mr. Kilsby for the first few years after his heart attack could reasonably be thought to be indicative of the type of problems that he might face now or in the future.