**Ralph J. GOLUB, Plaintiff–Appellee,**

**v.**

**J.W. GANT & ASSOCIATES, an Illinois limited partnership, J.W. Gant & Associates, Inc., an Illinois corporation, Defendants–Appellants.**

**No. 87–3867.**

United States Court of Appeals, Eleventh Circuit.

Jan. 23, 1989.

David A. Zisser, Denver, Colo., for defendants-appellants.

Robert V. Williams, Taub & Williams, William J. Schifino, Jr., Tampa, Fla., for plaintiff-appellee.

Before VANCE and KRAVITCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM.

Appellee, Dr. Ralph J. Golub, sued appellant, J.W. Gant and Associates, Inc. ("Gant"), a securities brokerage firm, for violations of the federal RICO statute, Section 12(2) of the Securities Act of 1933, Sections 10(b) and 20 of the Securities Exchange Act of 1934, Rule 10(b)–5 promulgated thereunder, and Florida's securities statutes, as well as for common-law fraud, negligence, gross negligence, and breach of fiduciary duties. The district court entered judgment on the jury verdict, which awarded Golub $10,000 in punitive damages but no compensatory damages. Gant appealed the district court's order (1) denying Gant's post-judgment motion to alter or amend the judgment, (2) denying Gant's post-judgment motion for attorneys' fees, and (3) granting Golub's post-judgment motion for

attorneys' fees. Finding no reversible error, we affirm.[1]

## I. FACTUAL BACKGROUND

At the suggestion of Joseph Ross, a securities dealer employed by Gant, Dr. Golub placed three orders with Gant for purchases of stock in a firm called "P.C. Quote." The first order was placed in October of 1984 for 100,000 shares, with a purchase price of $18,750.00; the second was placed in December of 1984 for 100,000 shares also at $18,750.00; and the third was placed in January of 1985 for 150,000 shares at a price of $23,437.50. Allegedly, Gant mishandled the December and January transactions, twice sold out Golub's investment account, and twice mistakenly debited the account. These debits totaled $10,947.50.

By March 1985, Gant claimed to have resolved all its clerical errors, to have cancelled the two mistaken debits, and to have reported the correct balance in Golub's investment account. By this time, however, Golub was convinced that Ross had misrepresented the potential earnings of P.C. Quote, and he demanded that Gant rescind the purchase Golub ordered in January and return the purchase price of $23,437.50.

Apparently, Gant took no action until August 1985, when it offered to buy the 150,000 shares Golub ordered in January and disavowed in March. Golub wanted to make the sale and accept a profit but retain his legal remedies against Gant for alleged misrepresentations. Gant was unwilling to yield a profit to Golub without a release from legal liability, so the deal fell through. Ultimately, Golub initiated this lawsuit, praying for rescission of the purchase ordered in January, for compensatory damages equal to the total of the January

purchase price ($23,437.50) and the two mistaken debits ($10,947.50), and for punitive damages.

At trial, and before the jury, Gant stipulated that it was holding at Golub's disposal the $23,437.50 purchase price of the stock ordered in January and that, at the conclusion of the trial, Gant would return this money to Golub. Gant also stated that it already had cancelled the $10,947.50 in mistaken debits.

After instructing the jury on the law of the case, the district court, pursuant to Fed.R.Civ.P. 49(a), directed the jury to return its decision on a special verdict form which included the following interrogatories:

1. Do you find that in connection with, and prior to plaintiff, Dr. Golub's purchase of the stock P.C. Quote from the defendant, J.W. Gant & Associates, that Gant, through its employee Joseph Ross, either knowingly or recklessly misrepresented any material fact(s) to Dr. Golub?

Yes _____ No _____

If your answer to Question number 1 is Yes, answer Question number 2. If your answer to Question number 1 is No, then go to Question number 5.

. . . . .

5. Do you find that in connection with, and prior to Dr. Golub's purchase of the stock P.C. Quote from the defendant, J.W. Gant & Associates, that Gant, through its employee Joseph Ross, negligently misrepresented any material fact to Dr. Golub and the misrepresentation was a direct and proximate cause of Dr. Golub's purchase of said stock?

Yes _____ No _____

---

1. The question of our jurisdiction of this appeal has been authoritatively answered by *Budinich v. Becton Dickinson & Co.,* —— U.S. ——, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). In *Budinich,* as in the instant case, the district court denied the plaintiff's new-trial motion, granted the plaintiff's post-judgment motion for attorneys' fees, and requested further briefing as to their amount. The Supreme Court held that the time within which to file a notice of appeal in the district court ran from the date on which the court denied the plaintiff's new trial motion

and granted attorneys' fees, not the (later) date on which the court ultimately decided the amount of attorneys' fees. The Court held that under federal law, which necessarily governs appealability under § 1291, both the imposition and the amount of attorneys' fees are always collateral to the merits of an action. —— U.S. at ——, 108 S.Ct. at 1721–22. Therefore, the judgment below was final for purposes of § 1291, and this court has jurisdiction of the appeal.

If your answer to Question number 5 is Yes, go to Question number 6. If your answer to Question number 5 is No, go to Question number 8.

. . . . .

8. Did Gant breach any of its fiduciary duties owed to Golub in the handling of his accounts?

Yes _____ No _____

If your answer to Question number 8 is Yes, go to Question number 9. If your answer to Question number 8 is No, go to Question number 11.

. . . . .

11. Did defendant, J.W. Gant & Associates, act with either malice or a willful and reckless disregard for the rights of Dr. Golub or in a grossly negligent manner in making representations to Dr. Golub regarding "P.C. Quote" stock or in its fiduciary duties owed to Dr. Golub in the handling of his accounts?

Yes _____ No _____

If your answer to Question number 11 is yes, you may assess punitive damages against Gant as a punishment and as a deterrent to others in the future. If you find that punitive damages should be assessed against Gant, please state the amount in dollars and cents, if any.

12. Do you find by a preponderance of the evidence that the defendant, J.W. Gant & Associates, violated 18 U.S.C. § 1962(c) (the RICO Act)?

Yes _____ No _____

If you answered Question number 12 Yes, go to Question number 13. If you answered Question 12 No, then do not answer Questions 13 and 14.

The jury answered interrogatories 1, 5, 8, and 12 in the negative, indicating that Gant had made no knowing or reckless misrepresentation of any material fact to Golub, that no negligent misrepresentation was the proximate cause of Golub's purchase of any stock, that Gant had not breached any fiduciary duty owed to Golub, and that Gant had not violated the federal RICO statute. Despite those findings, however, the jury answered the first part of interrogatory 11 in the affirmative, indicating that Gant had acted "with either malice or a willful and reckless disregard for the rights of Dr. Golub or in a grossly negligent manner in making representations to Dr. Golub regarding 'P.C. Quote' stock or in its fiduciary duties owed to Dr. Golub in the handling of his accounts." In the second part of interrogatory 11, the jury assessed $10,000.00 in punitive damages.

Before accepting the verdict, the judge informed the parties that it appeared to contain an inconsistency. At the side bar, the court noted that the jury's negative answers to interrogatories 1, 5, and 8 should have precluded an affirmative answer to interrogatory 11. In an attempt to reconcile the inconsistency, the court reasoned that the jury probably believed that Gant's agreement during the trial to return the $23,437.50 Golub paid for the January purchase and to credit Golub's accounts to offset the two mistaken debits compensated the actual damages suffered by Golub. The court reasoned that such a belief would explain the jury's answers to interrogatories 1, 5, and 8 and establish the predicate for its conclusion that punitive damages were warranted even though compensatory damages were not. Before actually accepting the verdict and discharging the jury, however, the court gave the parties the option of having the court (1) resubmit the case to the jury, or (2) accept the verdict as consistent when coupled with Gant's stipulation. Neither party opted to resubmit the case to the jury; therefore, the court annexed Gant's stipulation into the verdict, accepted the amalgam as consistent, and entered judgment awarding Golub $10,000.00 in punitive damages.

Golub subsequently moved for a new trial, for entry of additional findings of fact, and for attorneys' fees. Gant moved to alter or amend the judgment and for attorneys' fees. The court denied all motions except Golub's motion for attorneys' fees. The court determined that the jury's response to interrogatory 11 constituted a finding that Gant had violated Fla.Stat.

§ 517.301 (1985) [2] and entitled Golub to reasonable attorneys' fees as the "prevailing party" under *Fla.Stat.* § 517.211(6) (1985).[3] Thus, the court ordered further proceedings to establish the amount of those fees. Gant appeals the award of attorneys' fees to Golub, the denial of Gant's motion to alter or amend, and the denial of Gant's motion for attorneys' fees. Golub has not filed a cross appeal and now defends the judgment as entered.

## II. DISCUSSION

Gant purports to challenge neither the form nor the consistency of the verdict. Instead, Gant contends that the jury's verdict is consistent but that it is insufficient to support an award of punitive damages under Florida law. According to Gant, "[p]unitive damages are available only when there has been a breach of a legally protected interest." Gant argues that the jury's answers to interrogatories 1, 5, and 8 specifically rejected Golub's claims that Gant violated his "legally protected rights." At most, Gant continues, "the jury found that Gant acted with a particular mental state." Thus, Gant concludes, the district court erred in denying its motion to alter or amend and by awarding attorneys' fees to Golub rather than to Gant.

Golub does not dispute Gant's formulation of the Florida law of punitive damages. Rather he argues that Gant has waived its right to appeal. Golub asserts that, during the side bar conference, Gant rejected the trial judge's offer to resubmit the case to the jury and, thereby, stipulated to the court's acceptance of the verdict awarding punitive damages to Golub. Alternatively, Golub argues that, even if Gant did not actually *stipulate* to acceptance of the verdict, Gant waived its right to appeal by failing to object (1) to the *form* of the verdict before the jury was charged or (2) to the *consistency* of the verdict before the jury was excused. On the merits, Golub maintains that the court's annexation of Gant's stipulation cured any possible infirmity in the jury's verdict. Thus, Golub argues, the district court was correct to conclude that Golub was entitled to attorneys' fees as the "prevailing party" under section 517.211(6).

### A. *Punitive Damages*

 Even though Gant refused to exercise the opportunity to resubmit the case to the jury, the record shows that Gant opposed the court's acceptance of the "reconciled" verdict and, during the side-bar conference, attempted to preserve its right to challenge the verdict via a post-judgment motion to alter or amend. Consequently, we reject Golub's argument that Gant stipulated to acceptance of the verdict. Thus, the relevant question regarding the waiver issue is whether Gant's post-judgment motion was sufficient to preserve its right to appeal.

 To this question, we respond in the negative. Although we decline to characterize Gant's appeal as an attack on the *consistency* of the verdict,[4] we do agree

---

**2.** In 1985, when Golub's cause of action accrued, § 517.301 of the Florida Statutes provided, in part:

 It is unlawful and a violation of this chapter for a person:

 . . . . .

 (b) To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading. . . .

 Fla.Stat.Ann. § 517.301 (West Supp. 1985).

**3.** In any action brought under . . . section [517], including an appeal, the court shall award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be unjust.

Fla.Stat.Ann. § 517.211(6) (West 1988).

**4.** In its effort to avoid dismissal as an untimely challenge to the form of the verdict, Gant eschews the argument that interrogatory 11 improperly failed to require the jury to find the co-existence of a breach of a duty, proximate causation, and damage in order to award punitive damages. Instead, Gant simply asserts that, viewed as a whole (even with the integration of the agreement to repay Golub), the verdict reflects no such findings. It is here that Gant's argument takes on the cast of a challenge to the consistency of the verdict.

 In support of its argument that the required findings were not made, Gant marshalls the answers to interrogatories 1, 5, and 8 to show that no such finding *could have been* made.

that Gant's appeal is an untimely challenge to the *form* of interrogatory 11. As written, interrogatory 11 allowed the jury to award punitive damages without an explicit finding that Gant's breach of a duty owed to Golub proximately caused Golub damage. All the jury had to find to answer interrogatory 11 in the affirmative was that Gant breached a duty of care. No finding that that breach proximately caused any damage to Golub was required by interrogatory 11. Therefore, under Gant's theory of Florida's law of punitive damages, an affirmative answer to interrogatory 11 alone is insufficient to establish liability for punitive damages. Despite Gant's protestations to the contrary, this reasoning is a challenge to the form of interrogatory 11.

■ Objections to the form of interrogatories in a special verdict must be raised before the jury is charged. *Nimnicht v. Dick Evans, Inc.*, 477 F.2d 133, 134 (5th Cir.1973).[5] Otherwise, they are waived. *Id.; Clegg v. Hardware Mut. Cas. Co.*, 264 F.2d 152, 158 (5th Cir.1959); *see also Central Progressive Bank v. Fireman's Fund Ins. Co.*, 658 F.2d 377, 380–81 (5th Cir. Unit A Oct. 1981) ("[T]he Bank made no specific objection to [Interrogatory 3] until on mo-

tion for new trial and on appeal, thereby waiving any objection."). Thus, a challenge to the form of interrogatories can be made via a post-judgment motion only if first presented and rejected in the form of an objection to the court's charge to the jury. Because Gant made no such objection, either at the charge conference or when the judge distributed the special verdict form to the jury, it waived its right to this appeal.[6]

### B. *Attorneys Fees.*

■ It is undisputed that *Fla.Stat.* § 517.211(6) entitles the prevailing party in this lawsuit to reasonable attorneys' fees. The award of attorneys' fees is compelled by the statute unless the result would be unjust. Neither party has argued that imposition of attorneys' fees against itself would be unjust. Therefore, our disposition of Gant's appeal of the denial of its motion to alter or amend also resolves the merits of its appeal on the attorneys' fees issue. Because Gant waived its objection to the form of the interrogatories, Golub is the prevailing party in this action and is entitled to attorneys fees under the statute.

---

According to Gant, regardless of Judge Castagna's interpretation of the jury's understanding of Gant's agreement to cover Golub's actual losses, the answers to interrogatories 1, 5, and 8 reveal that the jury had not found the co-existence of a breach of a duty of care and proximate causation. Thus, although its effort to avoid dismissal as an untimely attack on the *form* of the interrogatories inadvertently makes Gant's appeal appear to be an untimely challenge to the consistency of the verdict, this is not the thrust of Gant's argument.

Even if construed as a challenge to the verdict's consistency, however, Gant's appeal is waived. In this circuit, all challenges to the consistency of special verdicts must be raised before the jury is excused. *ITEL Capital Corp. v. Cups Coal Co., Inc.*, 707 F.2d 1253, 1261 (11th Cir.1983) ("[A]ppellants waived their objection to alleged inconsistencies in the jury's answers to the special interrogatories [propounded pursuant to Fed.R.Civ.P. 49(a) ] by failing to object at the time the verdict was rendered."); *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 534 (5th Cir.1974) (same; Fed.R.Civ.P. 49(b)). *But see Pierce v. Southern Pacific Trans. Co.*, 823 F.2d 1366, 1370 (9th Cir.1987) (failure to object constitutes waiver only under Fed.R.Civ.P. 49(b)

and not under 49(a)); *Mercer v. Long Mfg. N.C., Inc.*, 671 F.2d 946, 947–48 (5th Cir. Unit A 1982) (same). As the proper remedy for an inconsistent verdict is resubmission of the case to the jury, Gant's rejection of Judge Castagna's offer to do so constitutes waiver of any later challenge to the consistency of the verdict.

5. The Eleventh Circuit, in the in banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

6. Although not raised by Gant, we have considered and rejected the argument that the infirmity of interrogatory 11 is a "fundamental error" that excuses Gant's failure to object before the jury retired. Without deciding whether Judge Castagna's interpretation of the verdict rendered was technically correct, we observe that, at the very least, it was reasonable. Thus, viewed in light of Gant's rejection of the court's offer to resubmit the case to the jury, interrogatory 11 was not so fundamentally flawed as to deprive Gant of a fair trial. *But see Dunn v. Ove Skou Rederi A/S*, 45 F.R.D. 18, 22–23 (E.D.Pa. 1968).

Accordingly, the judgment of the district court is AFFIRMED.