Mervyn CASHIE and Carol S. Edwards, Plaintiffs,

v.

HARRIS CORPORATION, a Delaware Corporation, authorized to do business in the State of Florida, Defendant.

No. 87–344–CIV–ORL–19.

United States District Court, M.D. Florida, Orlando Division.

July 11, 1990.

As Amended Aug. 27, 1990.

Elizabeth A. duFresne, Steel Hector & Davis, Miami, Fla., for plaintiffs.

George F. Lynch, Squire, Sanders & Dempsey, Miami, Fla., for defendant.

## MEMORANDUM

MERHIGE, District Judge, Sitting by Designation.

This matter is before the Court on the Defendant's Motions for Judgment pursu-

ant to Fed.R.Civ.P. 49(a) and for Judgment Notwithstanding the Verdict pursuant to Fed.R.Civ.P. 50(b). The matter has been fully briefed and is ripe for disposition. Jurisdiction is based on 29 U.S.C. § 621, *et seq.*

BACKGROUND

This is an employment discrimination action brought by Plaintiffs Mervyn Cashie and Carol Edwards against their former employer, Harris Corporation. Both plaintiffs alleged that Harris discriminated against them because of their age in denying them certain positions and promotions and in ultimately laying them off. Cashie, an Afro–American male, further alleged that Harris discriminated against him because of his race. Edwards further alleged that Harris discriminated against her because of her sex. The plaintiffs asserted the alleged age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, and asserted the alleged sex and race discrimination under Title VII and 42 U.S.C. § 1981. The Court shall address the plaintiffs' Title VII claims in a separate memorandum opinion.

On September 14, 1989, this Court granted summary judgment to Harris on Cashie's § 1981 claims regarding his layoff and Harris' failure to rehire him. The Court determined that this result was dictated by the Supreme Court's recent decision in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Cashie's ADEA claims and his remaining § 1981 claim, (regarding Harris' failure to promote him to the position of Manager of College Relations) were preserved for trial. The jury found for Harris as to those issues. Hence, each of Cashie's claims under § 1981 and the ADEA have been effectively concluded. The Court must therefore now address Harris' motions for judgment and judgment n.o.v. on Edwards' ADEA claims.

Edwards claimed at trial that Harris violated the ADEA in laying her off in February 1986, in failing to select her to be Manager of Corporate Travel in May 1986, and in failing to promote her to Corporate Manager of Management Training and Education in June 1985, to Government Systems Section Manager of Training and Development in June 1985, and to Personnel Manager in Montreal, Canada in December 1985.

On September 19, 1989, the jury rendered its verdict on these claims on a special interrogatory verdict form pursuant to Fed.R.Civ.P. 49(a). The verdict form utilized was agreed to and indeed drafted by the parties. Pursuant to the verdict form, the jury found that Harris had illegally discriminated against Edwards because of her age in denying her two promotions—to Corporate Manager of Management Training and Education (Section I, Interrogatory (a)), and to Government Systems Sector Manager of Training and Development (Section I, Interrogatory (b)). The jury found that Harris had not discriminated against Edwards because of her age in refusing to promote her to Personnel Manager in Montreal (Section I, Interrogatory 1(c)), or in refusing to rehire her as Manager of Corporate Travel (Section I, Interrogatory 9). Finally, the jury found that Edwards was not laid off in February 1986 because of her age (Section I, Interrogatory 3), but that the layoff was done in willful violation of the ADEA (Section I, Interrogatory 15(e)). This seeming inconsistency in findings regarding the layoff was not noticed by the Court until the jury had been excused, although it was noticed by Plaintiffs' counsel.

Because of the perceived inconsistency in the jury's findings regarding Edwards' layoff, the Court did not direct the entering of judgment for any party on Edwards' ADEA claims.

Harris now moves for judgment in accord with the jury's verdict on Edwards' age discrimination claims involving the failure to promote her to Personnel Manager in Montreal, her layoff, and the failure to rehire her as Manager of Corporate Travel. Harris also moves for judgment notwithstanding the verdict on Edwards' age discrimination claims involving the failure to promote her to Corporate Manager of Management Training and Education or to

Government Systems Sector Manager of Training and Development in June, 1985.

## DISCUSSION

### I. *Inconsistent Verdict*

Harris makes four arguments in support of its motion for judgment on Edwards' layoff claim. They are that (1) the inconsistent responses can be reconciled in Harris' favor; (2) the jury's response to Section I, Interrogatory 15(e) (finding a willful violation of the ADEA) is surplusage and should be ignored; (3) any inconsistency in the jury's responses can be disregarded because the jury misunderstood and/or disregarded the Court's instructions; and (4) Plaintiffs' counsel waived any objection to the verdict by not pointing out the inconsistency to the Court before the jury was dismissed.

### A. Reconciliation of the Responses

The threshold determination for the Court to make is whether the jury's verdict is indeed inconsistent.

■ When an inconsistent jury verdict is alleged, "[t]he Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly." *Griffin v. Matherne*, 471 F.2d 911 (5th Cir.), *reh'g denied*, 474 F.2d 1347 (5th Cir.1973). *See also Burger King Corp. v. Mason*, 710 F.2d 1480, 1489 (11th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). The test to be applied in determining whether inconsistent answers are reconcilable is "whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted." *Griffin*, 471 F.2d at 925.

■ The jury's responses to Interrogatories 3 and 15(e) in Section I can, in the Court's view, be logically reconciled. In Interrogatory 3, as the Court has noted, the jury found that Edwards' age was not a determinative factor in Harris' decision to lay her off. In so finding, the jury could have concluded that Harris was partially motivated by Edwards' age but that age was not a determinative factor. Conse-

quently, the jury could have concluded in Interrogatory 15(e), that Harris' discriminatory motive, although not determinative, was in knowing or reckless disregard of the ADEA. This construction of the verdict is supported by the jury's failure to respond to Section I, Interrogatories 4, 5, and 6, which dealt solely with amounts of monetary damages due Edwards. Under *Griffin*, therefore, and for the further reasons which follow, the Court is compelled to adopt the above construction of the verdict and to grant Harris' motion for judgment accordingly.

### B. Interrogatory 15(e) as Surplusage

■ Harris argues as well that because the jury responded negatively to Interrogatory 3 (finding that age was not a determinative factor in Edwards' discharge), its response to Interrogatory 15(e) (finding a willful violation) should be disregarded as surplusage. The Eleventh Circuit Court of Appeals, so far as the Court can determine, has not directly addressed this issue. However, other circuits have held that an interrogatory should be disregarded if it constitutes surplusage. *See, e.g., McCollum v. Stahl*, 579 F.2d 869 (4th Cir.1978), *cert. denied*, 440 U.S. 912, 99 S.Ct. 1225, 59 L.Ed.2d 460 (1979); *Fuggitt v. Jones*, 549 F.2d 1001 (5th Cir.1977).

In *McCollum v. Stahl*, the jury returned an inconsistent special interrogatory verdict as to the plaintiff's alleged wrongful discharge. The jury first concluded that the plaintiff had not been wrongfully discharged, and did not award any compensatory damages. Later, however, the jury concluded that the discharge was "maliciously, wantonly, or oppressively done," and awarded punitive damages. The trial court recognized the verdict's inconsistency and sent the jury back to reconsider its answers, whereupon the jury returned a consistent verdict for the plaintiff. On appeal, the Fourth Circuit Court of Appeals upheld a contention that the resubmission was procedurally impermissible under Fed. R.Civ.P. 49(a), and that judgment should have been entered for the defendant since the jury's negative response to the wrong-

ful discharge interrogatory was "altogether dispositive of [the plaintiff's] claim." *Id.* at 871. In addition, the court upheld the further contention that "[t]he remaining questions did not go to the determinative issue—liability. They were surplusage to be disregarded as no longer having place in the litigation." *Id. See also Ratigan v. New York Cent. R.R.,* 291 F.2d 548, 554–55 (2d Cir.), *cert. denied,* 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961) (erroneous legal conclusion in interrogatory disregarded as surplusage where facts determined by prior interrogatories).

The instant case is factually similar to *McCollum* in that the jury found in Interrogatory 3 that age was not a determinative factor in Harris' decision to lay off Edwards. The jury's subsequent finding of willfulness is irrelevant since willfulness is merely the standard for assessing liquidated damages, not for a finding of substantive liability. Edwards' argument to the contrary ignores the inclusion in the interrogatory of a parenthetical explanation that a finding of willfulness "will cause the Court to multiply the lost wages and fringe benefits by two." Verdict at Section I, Interrogatory 15. The placement of Interrogatory 15 at the end of the section dealing with the ADEA claims further suggests that the interrogatory was meant to address damages and not liability.[1]

### C. Jury's Misunderstanding or Disregard of the Court's Instructions

Harris further argues that any alleged inconsistency between Interrogatories 3 and 15(e) can be disregarded because the Court instructed the jury to address willfulness only if a violation was found. In so doing, Harris relies on *Willard v. The John Hayward,* 577 F.2d 1009 (5th Cir.1978). The court in *Willard* instructed the jury not to answer a comparative negligence interrogatory unless they found that the

defendant's negligence caused the plaintiff's injury. The verdict form, however, was phrased in such a manner as to have the jury answer the interrogatory on comparative negligence regardless of how the other interrogatories were answered. The jury subsequently found that while the defendant's negligence did not cause the plaintiff's injury, the plaintiff's negligence was only 75% responsible for the injury. Despite this seeming inconsistency, the Court concluded that on the facts of the case, the jury could have found that a pre-existing injury contributed the remaining 25% to the plaintiff's injury. The Court thereupon observed that "[e]ven a jury verdict inconsistent on its face is not inconsistent if it can be explained by assuming that the jury reasonably misunderstood the instructions," and denied the plaintiff's alternative motions for judgment n.o.v. or a new trial. *Id.* at 1011.

The instant case is comparable to *Willard* in that the Court instructed the jury to address willfulness only if a violation was found. Record at Vol. V, p. 127. Also, the verdict form in the instant case was similar to the one in *Willard* in that it was phrased so that the jury was required to address the issue of willfulness in Interrogatory 15(e) even though they had found no violation of the ADEA in Interrogatory 3. Thus, it can be assumed that the jury reasonably misunderstood the Court's instructions. As Edwards' response to Harris' motion points out, however, *Willard* does not stand for the proposition that such a misunderstanding negates the jury's finding of willfulness. The court in *Willard* simply recognized that inconsistent answers must be reconciled where possible, and that the jury misunderstood the court's instructions merely explained how an otherwise reconcilable verdict could be facially inconsistent. 577 F.2d at 1011. The signif-

---

1. The Fifth Circuit reached the same conclusion in a similar case, *Fugitt v. Jones,* 549 F.2d 1001 (5th Cir.1977). That case involved a prisoner's suit for failure to provide prompt medical attention. The plaintiff contended that the jury's finding that the defendants' behavior was "deliberate or with flagrant indifference" was inconsistent with its subsequent finding that the defendants did not act "knowingly and in conscious disregard" of the plaintiff's injuries. *Id.* at 1005. The court disagreed, observing that "the arrangement of the questions in the verdict form indicates that these questions were designed to separate compensatory from punitive damages." *Id.*

icance of the jury's apparent misunderstanding of the Court's instructions in the instant case is similarly limited.

### D. Edwards' Waiver of Right to a New Trial

Harris additionally argues that Edwards waived any objection to alleged inconsistencies in the jury's verdict by failing to request that the verdict be resubmitted to the jury.

The Eleventh Circuit has twice said in dicta that any objection to alleged inconsistencies in a jury's answers to special interrogatories is waived if no objection is made at the time the verdict is rendered. *See Golub v. J.W. Gant & Assocs.*, 863 F.2d 1516, 1521 n. 4 (11th Cir.1989); *Intel Capital Corp. v. Cups Coal, Inc.*, 707 F.2d 1253, 1261 (11th Cir.1983). Other circuits are in conflict over whether the waiver rule applies to inconsistent verdicts under Rule 49(a). *See Skillin v. Kimball*, 643 F.2d 19, 20 (1st Cir.1981) ("To allow a new trial after the objecting party failed to seek a proper remedy at the only possible time would undermine the incentives for efficient trial procedure and would allow the possible misuse of Rule 49 procedures ... by parties anxious to implant a ground for appeal should the jury's opinion prove distasteful to them."); *but see Pierce v. Southern Pacific Transp. Co.*, 823 F.2d 1366 (9th Cir.1987) (failure to object does not constitute waiver under Rule 49(a)); *Mercer v. Long Mgf. N.C., Inc.*, 671 F.2d 946 (5th Cir.), *reh'g denied*, 671 F.2d 946 (5th Cir.1982) (same).

Counsel for the plaintiffs admits that she knew of an inconsistency before the jury was dismissed.

> Counsel ... realized that two of the answers did not seem to coincide. [She] considered asking this Court to review the verdict but since she was unsure of the extent of the inconsistency, she did not interrupt the Court as it dismissed the jury. She stood only to be waived (sic) to her seat.

Plaintiff's Response to Defendant's Motion for Judgment at 7–8. The behavior of the plaintiffs' counsel raises the concerns about abuse noted by the First Circuit in *Skillin*. Furthermore, the *Golub* and *Intel* opinions suggest that under the law of this circuit, counsel waived any objections to the verdict by not bringing the inconsistency to the Court's attention before the jury was dismissed. In any case, given that the answers to the interrogatories are reconcilable, the Court is not free to order a new trial even if there were no waiver rule in this circuit.

### II. Judgment N.O.V. on Edwards' Remaining Promotion Claims

Harris contends that the two promotion denial claims, (Corporate Manager of Management Training and Education and Government Systems Sector Manager of Training and Development) on which the jury found for Edwards are time-barred under the ADEA's statute of limitations. Edwards argues that although the promotion denials occurred outside of the limitations period, the claims are not time-barred because the denials were part of a continuing violation committed by Harris.

In deferral states such as Florida, charges of discrimination under the ADEA must be filed within 300 days of the alleged discriminatory act. 29 U.S.C. § 626(d)(2). However, acts which occurred outside of the 300 day limitations period are not time-barred if they are part of a continuing violation which extended into the limitations period. *Robinson v. Caulkins Indiantown Citrus Co.*, 701 F.Supp. 208, 211 (S.D.Fla.1988). Under the continuing violation theory, the limitations period does not begin to run until the time of the final act. *Fowler v. Taco Viva*, 646 F.Supp. 152, 155 (S.D.Fla.1986). To establish a continuing violation, the plaintiff must show either: (1) a series of related acts, at least one of which occurred within the limitations period; or (2) the operation of a discriminatory system both before and during the limitations period. *Id.* at 156. Determination of whether a continuing violation exists must be made on a case-by-case basis. *Delaware State College v. Ricks*, 449 U.S. 250, 258 n. 9, 101 S.Ct. 498, 504 n. 9, 66 L.Ed.2d 431 (1980).

Edwards filed her EEOC charge on July 31, 1986. Any acts occurring before

October 4, 1985, are thus outside the 300 day limitations period. The promotion denials found by the jury to be discriminatory occurred in June 1985, and are therefore time-barred unless Edwards showed that they were part of a continuous violation extending past October 4, 1985. Edwards did allege additional related discriminatory acts that occurred during the limitations period—the December 1985 denial of promotion to Personnel Manager in Montreal, the February 1986 layoff, and the May 1986 denial of rehire to Manager of Corporate Travel—but the jury found that age was not a determinative factor in those decisions. Edwards therefore failed to establish a continuing violation through a series of related acts.

Edwards also contends that she was the victim of a discriminatory system that operated before and during the limitations period in that Harris favored "the young MBAs." She claims that the alleged discriminatory acts of which she complains were the culmination of Harris' discriminatory policy. As heretofore noted, however, the jury found that those acts were not discriminatory, and the Court finds that Edwards did not establish that Harris' policies discriminated against employees because of their age. Edwards therefore failed to establish a continuing violation through a discriminatory system. Because Edwards failed to show that Harris' alleged discrimination continued into the limitations period, her June 1985 promotion denial claims are time-barred.

### III. *Conclusion*

Having concluded that the jury's verdict as to Edwards' layoff claim was in fact a verdict for Harris, and that Edwards' June 1985 promotion claims are time-barred, the Court will enter judgment for Harris on all of Edwards' ADEA claims. Judgment will be entered for Harris as well on each of Cashie's claims in accord with the jury's verdict.

An appropriate Order shall issue.