110 F.3d 63
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert DAVIS, Plaintiff-Appellant, Cross-Appellee,
v.
Ed YOVELLA, Chief; Anthony Bowman; William T. Snyder,
Chancellor; Defendants-Appellees, Cross-Appellants,
University of Tennessee; Robert Wyrick; Burl Harris
Defendants-Appellees.
 Nos. 95-5415, 95-5450 and 95-6036.
 United States Court of Appeals, Sixth Circuit.
 April 2, 1997.
 
 Before: MERRITT, COLE, Circuit Judges; and DUGGAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Robert Davis appeals an order of the district court denying his motion for a new trial on damages or for additur, following a jury verdict that his civil rights were violated and a damage award of $250. Defendants-Appellees Yovella, Bowman and Snyder cross-appeal, asserting that: (1) the verdict was not supported by substantial evidence; (2) the district court erred in rejecting defendant Anthony Bowman's claim of qualified immunity; and (3) the district court erred in awarding Davis attorney's fees. For the reasons that follow, we reverse in part, affirm in part, and remand with instructions.
 
 I.
 
 2
 Following an incident in which a Knoxville police officer shot and killed Darlene Shofner Grant in the presence of University of Tennessee police officers, University of Tennessee student Robert Davis formed a group to focus attention on police brutality. This group was known as the Beck/Shofner Victim's Voice Assault Crisis Association. Davis and group members engaged in demonstrations on campus, which included the display of banners and signs protesting individual police officers and police practices.
 
 
 3
 On the evening of September 13, 1991, Davis and group members hung several banners critical of local and university police over the pedestrian bridge which spans Cumberland Avenue. Although there was no written policy prohibiting the hanging of banners on or near the bridge, the University claims there was an unwritten policy against such behavior. Nonetheless, it is clear that a variety of banners were routinely hung by students from the bridge; indeed, the police tolerated, in their words, the display of banners by Davis and his group for five or so weeks without taking action.
 
 
 4
 As Davis was hanging the banners, University police officers Wyrick and Bowman ordered him to remove them. Although complying with the officers' orders, Davis stated that University police previously had allowed fraternity and athletic banners to hang from the same place without objection. Shortly after their removal, Davis rehung the banners from the bridge. When the police returned and again demanded removal of the banners, an altercation took place involving Davis and police officers Bowman and Wyrick. As the police officers attempted to confiscate the banners and search and arrest Davis, Davis's head was pushed into the dirt of a planter. During this time, University police officer Harris arrived on the scene. Davis was then taken to the University police station, where he was charged with disorderly conduct and resisting arrest. The charges were subsequently dismissed.
 
 
 5
 Upon his release from detention, Davis sought medical attention for pain in his neck and upper back, caused, he claims, by excessive force used by Wyrick, Bowman and Harris during his arrest. Davis incurred medical bills of $11,666.55 in connection with the diagnosis and treatment of a herniated disc in his neck.
 
 
 6
 Davis filed suit against the University of Tennessee, Wyrick, Bowman and Harris, alleging a deprivation of his rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States. Davis also sought relief under 42 U.S.C. § 1983. The Chancellor of the University, William T. Snyder, and the University's Police Chief, Edward Yovella, were sued in their official capacities for injunctive relief only. Davis's suit sought compensatory damages in an amount not exceeding $250,000, and a like amount in punitive damages. The University of Tennessee was dismissed as a defendant prior to trial, as was Davis's Fourteenth Amendment claim.
 
 
 7
 At trial, Davis claimed that Yovella and Snyder violated his First Amendment rights, and Bowman, Wyrick and Harris his First and Fourth Amendment rights, in connection with the confiscation of the banners and his arrest. The jury found that Bowman violated Davis's "civil rights," and awarded Davis $250 in "compensatory or nominal damages" against Bowman. The jury refused to award any punitive damages against any of the defendants. The jury also found that Wyrick and Harris did not violate Davis's civil rights. Lastly, the jury found that Yovella and Snyder violated Davis's First Amendment rights.
 
 
 8
 Davis moved for a new trial on the issue of damages, or for additur, on the ground that his medically related damages were substantially greater than the jury award. The district court denied Davis's request, but granted his motion for equitable relief, ordering the University, to the extent that it had a policy of denying persons the right to hang banners, to enforce such policy equitably. Finally, the district court denied defendants' motion for judgment notwithstanding the verdict.
 
 
 9
 Davis appeals the district court's denial of his motion for a new trial on damages.[1] Davis argues that the district court erred in denying his motion for a new trial on damages because the jury's damage award of $250 against Bowman was clearly inadequate. Defendants Bowman, Snyder and Yovella cross-appeal, arguing that the district court erred in denying Bowman qualified immunity and in awarding Davis attorney's fees and costs. Defendants Bowman, Snyder and Yovella also cross-appeal the denial of their motion for judgment notwithstanding the verdict.
 
 II.
 
 10
 Pursuant to Federal Rule of Civil Procedure 59(a), a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). We have interpreted this to mean that a court should grant a motion for a new trial when the jury has reached a "seriously erroneous result." There are three factors to be considered in deciding that a court has reached an erroneous result. These are: "(1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." Holmes v. City of Massillon, Ohio, 78 F.3d 1041, 1045-46 (6th Cir.), cert. denied, 117 S.Ct. 312 (1996); see also Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940); Cygnar v. City of Chicago, 865 F.2d 827, 835 (7th Cir.1989); Mallis v. Bankers Trust Co., 717 F.2d 683, 691 (2d Cir.1983).
 
 
 11
 A district court's denial of a motion for a new trial will be reversed only for an abuse of discretion. TCP Industries, Inc. v. Uniroyal, Inc., 661 F.2d 542, 546 (6th Cir.1981); Duncan v. Duncan, 377 F.2d 49, 52-53 (6th Cir.), cert. denied, 389 U.S. 913 (1967). An abuse of discretion exists when, as a reviewing court, we are firmly convinced that a mistake has been made. In re Bendectin Litigation, 857 F.2d 290, 307 (6th Cir.1988), cert. denied, 488 U.S. 1006 (1989). Ordinarily, the question of adequacy of damages is left to the sound discretion of the trial court, which is in the best position to evaluate such a claim. Semper v. Santos, 845 F.2d 1233, 1236 (3d Cir.1988); Sterling v. Forney, 813 F.2d 191, 192 (8th Cir.1987). When inadequacy of the jury verdict is the basis for the motion for new trial, "an abuse [of discretion] can be found only in extreme cases, such as ... where the award is substantially less than the unquestionably proven damages." Traylor v. United States, 396 F.2d 837, 839 n. 1 (6th Cir.1968) (citing Reisberg v. Walters, 111 F.2d 595 (6th Cir.1940)); see Anchor v. O'Toole, 94 F.3d 1014, 1021 (6th Cir.1996).
 
 
 12
 In the present case, we believe that the district court abused its discretion in denying Davis's motion for a new trial on damages. The jury's written verdict form did not specify whether the $250 in damages was awarded under the First or Fourth Amendment claims, or both; it simply noted that damages were awarded against Bowman because he violated the civil rights of the plaintiff.[2] Although the jury's verdict makes no specific reference to the First or Fourth Amendments, it clearly includes the specific violation of "civil rights," which can only reasonably be construed as Davis's rights under both Amendments. See City of Los Angeles v. Heller, 475 U.S. 796 (1986) (an attempt to resolve an inconsistent jury verdict by reconciling it only on a theory that was never presented to a jury would be improper); Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 119 (1963) (In considering jury answers to questions in a special verdict, "it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them.... We therefore must attempt to reconcile the jury's findings, by exegesis, if necessary....); Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."); Waggoner v. Mosti, 792 F.2d 595, 597 (6th Cir.1986) (courts must attempt to reconcile inconsistency in jury verdicts).
 
 
 13
 We do not base our decision, however, on our belief that the jury concluded that both Davis's First and Fourth Amendment rights were violated; the outcome is the same regardless of whether the jury believed that Davis's First Amendment rights, Fourth Amendment rights, or both, were violated. If Davis was injured in response to the expression of his First Amendment rights, that is no less injury than that resulting from the use of excessive force in violation of his Fourth Amendment rights. Even if the jury concluded that only Davis's First Amendment rights were violated, Davis's injuries flowed from the altercation. What is conclusive in this case is that the jury determined that Davis's civil rights were violated during the altercation, at which time Davis suffered injuries. However, the jury failed to award Davis his medical expenses arising from the injuries. We therefore believe that the amount of damages awarded by the jury was not an amount that reasonably could have been reached.
 
 
 14
 The evidence presented at trial indicated that Davis incurred medical expenses of $11,666.15. The jury's award of $250 bears no relationship to the damages sustained by Davis as a result of the violation of his First or Fourth Amendment rights. Moreover, the amount of $250 is substantially less than Davis's proven, uncontroverted damages of $11,666.15 in medical expenses. Thus, the trial court abused its discretion in failing to grant Davis's motion for a new trial on damages. See Cappello v. Duncan Aircraft Sales, 79 F.3d 1465 (6th Cir.), cert. denied, 117 S.Ct. 432 (1996); Creech v. Roberts, 908 F.2d 75, 83 (6th Cir.1990), cert. denied, 499 U.S. 975 (1991).
 
 
 15
 With respect to liability, we find that the jury's verdict was supported by substantial evidence. We therefore affirm the district court's denial of defendants-appellees Yovella, Bowman and Snyder's motion for judgment notwithstanding the verdict.
 
 III.
 
 16
 In addition to seeking injunctive relief from University officials in their official capacity, Davis also sought monetary relief or damages from Bowman in his individual capacity. At trial, the district court rejected Bowman's claims of qualified immunity. On appeal, Bowman asserts that he is entitled to qualified immunity from liability in his individual capacity because his actions did not violate a clearly established right or rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Consequently, the question before the court is whether the rights protected under the First Amendment, which Davis seeks to vindicate in this suit, are "clearly established."
 
 
 17
 The Supreme Court has determined that whether a legally protected interest is clearly established turns on "the objective legal reasonableness of an official's acts." Id. at 819. "Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate ... But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by actions taken 'with independence and without fear of consequences.' " Id. (quoting Pierson v. Ray, 386 U.S. 547, 554 (1967)). In determining whether the officer's actions were reasonable, we must determine whether the banners and posters placed around campus by Davis fell within an exception to the rule that "under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of the hearers." Street v. New York, 394 U.S. 576, 592 (1969). Further, in determining whether Bowman is entitled to qualified immunity, this court must ascertain whether, objectively viewed, Bowman, as a public official, would have believed that his acts violated clearly established law. Anderson v. Creighton, 483 U.S. 635, 641 (1987).
 
 
 18
 We conclude here that "[t]he contours of the right [were] sufficiently clear [so] that a reasonable official would understand that what he [did] violates that right." Id. at 640. It is plainly evident, on a university campus in particular, that "[a] content based restriction ... will only be upheld if the Court can find that it fits within a category of speech unprotected by the first amendment." See Ronald D. Rotunda and John E. Noway, Treatise in Constitutional Law: Substance and Procedure, 2d §§ 20.1, 20.47. The evidence showed that other student organizations who did not protest police brutality, such as fraternities, sororities and athletic organizations, hung banners over the bridge with little ado. Further, Davis himself testified that when he and Bowman were involved in a tug-of-war over the banner, Bowman said, "Give it to me! I'm going to burn the goddamn thing!" Bowman, in his defense, asserts that he was simply following the police chief's orders when he directed Davis to take down his banners. Additionally, Bowman argues that there was an unwritten rule prohibiting the hanging of banners on the bridge. Because he was "simply following orders," Bowman claims that he was not directing Davis to take down his banners based on their content, and therefore, he, Bowman, should be entitled to qualified immunity.
 
 
 19
 We disagree and find that Bowman is not entitled to qualified immunity because he inequitably enforced an unwritten policy against clearly protected speech. Bowman, a police officer on a university campus, surely was aware that the First Amendment forbade, except in the narrowest of circumstances, the type of conduct at issue here: a police officer removing only a particular group of students' banners rather than removing all students' banners. Absent a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views. Tinker v. Des Moines Indep. Community Sch. Dist., 393 U.S. 503, 506 (1969); see also Police Dep't v. Mosley, 408 U.S. 92, 95 (1972) ("[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter or its content."); Sweezy v. New Hampshire, 354 U.S. 234, 250 (1957); West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 637 (1943) (defendants may not infringe upon students First Amendment rights without constitutional justification); Marsh v. Alabama, 326 U.S. 501 (1946) (pamphleteering involves the distribution of leaflets and is afforded broad First Amendment freedoms of speech); Shelton v. Tucker, 364 U.S. 479, 487 (1960) ("Full First Amendment protection applies to teachers and students and must be a vigilant[ly] protect[ed] constitutional freedom ... nowhere more vital than in the community of American schools."); Keyishian v. Board of Regents, 385 U.S. 589, 603 (1967); Meyer v. Nebraska, 262 U.S. 390, 402 (1923). We therefore affirm the district court's denial of qualified immunity for Bowman with respect to Davis's First Amendment claims.
 
 IV.
 
 20
 Davis also argued that his Fourth Amendment right to be free from unlawful search and seizure and excessive force was violated when Bowman and other University police officers cursed at him, engaged him in a tug-of-war over the banners, and subsequently searched his pockets and arrested him. Bowman claims that he is entitled to qualified immunity because the actions of attempting to confiscate the banners, arresting Davis, and searching his pockets were objectively reasonable and did not constitute excessive force.
 
 
 21
 The right to be free from the use of excessive force is clearly established under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 394 (1989). The objective reasonableness standard for entitlement to qualified immunity, as established in Harlow and Anderson, remains the same with a Fourth Amendment violation. See Graham, 490 U.S. at 388 (excessive force claims judged against Fourth Amendment objective reasonableness standard, not substantive due process); Johnson v. Jones, 115 S.Ct. 2151, 2159 (1995) (examine facts bearing on excessive force claim in light most favorable to subject of force). To determine whether objective reasonableness in the use of force exists, we consider the factors set forth in Graham: (1) the severity of the crime at issue, (2) whether the subject posed a threat to anyone, and (3) whether the suspect was attempting to escape or resisting arrest. Graham, 490 U.S. at 396.
 
 
 22
 In examining the facts of this case within these parameters, the jury could have found that Bowman acted with excessive force. First, facts in evidence at trial show that the charges against Davis, which were eventually dismissed, were not serious. Second, there is no evidence that Davis posed a risk to the officers or anyone present. Third, while Davis was charged with disorderly conduct and resisting arrest, the record shows that he did not resist arrest; rather, he resisted Bowman's attempt to take his banner. The record also shows that after Davis's altercation with the police, the arrest and the detention, Davis sought medical attention for pain in his neck and back. We therefore find that because the jury could have concluded that Bowman used excessive force, Bowman is not entitled to qualified immunity for Davis's Fourth Amendment claims.
 
 V.
 
 23
 Defendants, in their cross-appeal, assert that the district court erred in granting Davis attorney's fees. Defendants claim that Davis was not a prevailing party at trial because, in being awarded only $250 in damages and having the district court order the equitable enforcement of the banner policy, he won neither a significant amount of damages nor materially altered his position with respect to the University. Thus, defendants claim that Davis did not meet his lodestar requirement under Hensley v. Eckerhart, 461 U.S. 424 (1983); see also Marek v. Chesny, 473 U.S. 1, 11 (1985); City of Riverside v. Rivera, 477 U.S. 561, 585 (1986); Blanchard v. Bergeron, 489 U.S. 87, 96 (1989); Farrar v. Hobby, 506 U.S. 103, 113-16 (1992).
 
 
 24
 A district court's award of attorney's fees is reviewed for abuse of discretion. Hensley, 461 U.S. at 440. In the present case, we find that the district court did not abuse its discretion in its award of attorney's fees.
 
 
 25
 The district court determined that attorney's fees were appropriate because Davis was the prevailing party, the hours claimed were reasonably expended, and Davis achieved equitable relief in this case. The district court further considered the fact that Davis's degree of success was short of the relief he sought, and reduced Davis's lodestar for his attorney's fees by fifty percent. In light of the foregoing--and the fact that we are remanding this case for a new trial as to the issue of damages--we find that the district court did not abuse its discretion. We therefore affirm the district court's award of attorney's fees.
 
 VI.
 
 26
 Accordingly, the judgment of the district court is REVERSED on the issue of damages. The judgment of the district court on the issue of liability sustaining the verdict, the award of attorney's fees, and the denial of qualified immunity is AFFIRMED. The case is REMANDED to the district court for a new trial limited to the issue of damages.
 
 
 27
 PATRICK J. DUGGAN, District Judge, dissenting.
 
 
 28
 I respectfully dissent. I cannot conclude from the record before us that the jury found that Bowman violated plaintiff's rights under the Fourth Amendment. The jury's finding that there was a violation of Davis' "civil rights" and an award of $250.00, when the medical bills incurred for plaintiff's injury were undisputed, suggests to me that the jury did not find that plaintiff's injuries were caused by Bowman's use of excessive force in violation of plaintiff's rights under the Fourth Amendment. If it was the jury's determination that only plaintiff's First Amendment rights were violated, I do not find the award of $250.00 unreasonable because I do not believe that plaintiff's physical injuries necessarily flowed from a violation of plaintiff's First Amendment rights.
 
 
 29
 I acknowledge, however, that the majority may well be correct that the jury's determination that there was a violation of plaintiff's "civil rights" included a determination that Bowman had violated plaintiff's Fourth Amendment rights by the use of excessive force. If that was the jury's finding, the award of $250.00 was clearly inadequate and a new trial should be granted on the issue of damages.
 
 
 30
 In my judgment, the better course of action is to remand this case for a new trial both as to liability and damages, with a direction that the jury verdict form specifically request a separate finding with respect to plaintiff's claims under the First Amendment and the Fourth Amendment.
 
 
 
 *
 The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Although Davis's notice of appeal seeks review of the district court's denial of additur, Davis does not pursue additur on appeal
 
 
 [2]
 The district judge speculated, during a hearing on post-trial motions, that Davis prevailed against Bowman on his First Amendment claim, and that the $250 damages were compensation for that violation. There was, however, no judicial determination to that effect